## WALTER E. WHITMARSH vs. COMMONWEALTH.

Suffolk.    April 2, 1974. — September 4, 1974.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & WILKINS, JJ.

*Supreme Judicial Court,* Superintendence of inferior courts. *Constitutional Law,* Double jeopardy, Speedy trial, Due process of law, Trial by jury. *Practice, Criminal,* Waiver of appellate rights, Appeal to Superior Court, Sentence, "Two-tier" court system.

A petition in the county court designated "Interlocutory Appeal," alleging merely petitioner's conviction of a misdemeanor by a District Court judge following denial of a motion for a trial by jury and a procedural appeal to the Superior Court, and seeking to raise the issue of the constitutionality of the Commonwealth's two-tier court system, was not properly before the county court; G. L. c. 278, § 28E was inapplicable. [214]

A petition under G. L. c. 211, § 3, seeking a declaration that the Commonwealth's two-tier court system in certain criminal cases violates a constitutional right of the petitioner to a jury trial in the initial District Court proceeding did not present a case for exercise of this court's jurisdiction on the ground that "no other remedy is expressly provided" where the petitioner had raised the same issue in the District Court and the Superior Court on appeal, and if found guilty at the de novo trial he may obtain a ruling on the issue as a matter of right by exceptions to the denial of his motion to dismiss; the fact that acquittal may render the petitioner's constitutional claims moot does not warrant the exercise of this court's "extraordinary" powers of review under c. 211, § 3. [215-217]

One who had adopted the strategy of delaying a jury trial in the Superior Court, following conviction of a misdemeanor in a District Court, in favor of attempts to obtain an interlocutory ruling by the county court on a constitutional question was in no position to claim that his right to a speedy trial under the Sixth Amendment to the United States Constitution had been violated. [216, 219-226]

A defendant in a criminal case who failed to appear when his case was called for trial in the Superior Court after denial of his petition in the county court for a stay of proceedings was not entitled to any appellate relief from this court. [217-218]

The Commonwealth's two-tier court system in certain criminal cases

satisfies the jury trial requirement of the Sixth Amendment to the United States Constitution. [226]

Following conviction and sentence for a crime by a District Court judge and appeal by the defendant to the Superior Court pursuant to G. L. c. 278, § 18, his claim that a de novo trial there before a jury and the possibility of the imposition of a greater sentence upon a verdict of guilty would violate the double jeopardy clause of the Fifth Amendment to the United States Constitution was rejected by this court. [226-227]

PETITION filed in the Supreme Judicial Court for the county of Suffolk on September 18, 1973.

The case was reserved and reported by *Braucher, J.*

*Robert W. Hagopian* for the plaintiff.

*Robert B. Russell,* Assistant District Attorney, for the Commonwealth.

QUIRICO, J.   On September 6, 1973, the plaintiff in the present case was tried in a District Court on a complaint charging him with the misdemeanor of operating a motor vehicle while under the influence of intoxicating liquor. G. L. c. 90, § 24 (1) (a), as amended through St. 1971, c. 1071, § 4. Before the trial started he filed a written motion for a trial by jury which was denied. After a trial before a judge of the District Court, at which he rested, without presenting any evidence, upon completion of the Commonwealth's case, he was found guilty and fined $100. He appealed therefrom to the Superior Court (G. L. c. 278, § 18), requesting the court to note that the appeal "was not to be considered a waiver of his demand for a trial by jury and was being made only to preserve that right procedurally." The appeal was entered in the Superior Court on September 10, 1973, and it has not been tried.

On September 18, 1973, the plaintiff filed a document entitled "INTERLOCUTORY APPEAL" with the clerk of this court for Suffolk County alleging the facts stated above and asking that the court declare that the "Massachusetts two-trial de novo procedure . . . [violates] Article XII of the Massachusetts Constitution and the Fifth, Sixth, and Fourteenth Amendment[s] of the United States Constitution," and that it "enjoin the Commonwealth from

further prosecuting the complaint initiated in the District Court."[1] The latter request was denied by the single justice on November 8, 1973, and the plaintiff excepted thereto. On December 10, 1973, the Commonwealth filed an answer admitting all of the facts alleged in the plaintiff's petition. On January 11, 1974, a single justice of this court, acting at the request of the parties, reserved and reported the case without decision to the full court for its determination on the pleadings.

## QUESTIONS OF PROCEDURE AND STANDING.

We are confronted at the outset with several serious questions concerning the procedure by which the plaintiff seeks to raise the important issue of the constitutionality of this Commonwealth's two-tier court system and his standing to do so in the particular circumstances of this case.

1. *Purported Interlocutory Appeal.* Despite the plaintiff's designation of his petition as an "INTERLOCUTORY APPEAL," it is not such in fact or in law. The only interlocutory appeal available to a defendant in a criminal case in this Commonwealth is that provided by G. L. c. 278, § 28E, inserted by St. 1967, c. 898, § 1. That statute permits a defendant "in a felony case" to make application to the Chief Justice or to a single justice of this court for leave to take "an interlocutory appeal from a decision, order or judgment of the superior court determining a motion to suppress evidence prior to trial." This case does not come within the quoted statutory language, first, because it involves a misdemeanor and not a felony, and, second, because there has been no "decision, order or judgment of the superior court" on a "motion to suppress evidence."

---

[1] On September 20, 1973, the plaintiff filed a motion in the Superior Court requesting that the complaint which was the subject of the appeal be dismissed. An examination of the docket entries in that appeal indicates that the motion had not been acted on up to the date of argument before the full court in the present case.

Whitmarsh *v.* Commonwealth.

2. *Relief under G. L. c. 211, § 3.* The first paragraph of the plaintiff's petition states that the jurisdiction of this court is invoked pursuant to G. L. c. 211, § 3 (as amended by St. 1956, c. 707, § 1),[2] which provides in part that this court "shall have general superintendence of all courts of inferior jurisdiction to correct and prevent errors and abuses therein *if no other remedy is expressly provided*" (emphasis supplied). We have indicated in a number of decisions that our power under this statute should be used sparingly, and that it should rarely be used in a case where some other practical remedy is available. In *Barron* v. *Barronian,* 275 Mass. 77, 80 (1931), we characterized a request for relief under this statute as a request "for extraordinary intervention." In *Gilday* v. *Commonwealth,* 360 Mass. 170 (1971), we said: "Only in the most exceptional circumstances will we review interlocutory rulings in criminal cases under our general superintendence powers," and we there exercised the power to avoid an error which "might be irremediable, and possibly not curable even by a new trial since the defendants could not thereafter be placed in statu quo." *Id.* at 171. In *Myers* v. *Commonwealth,* 363 Mass. 843, 844 (1973), and in *Corey* v. *Commonwealth,* 364 Mass. 137, 138 (1973), we repeated the language quoted above from the *Gilday* case and then exercised our extraordinary power under § 3 to insure the proper conduct of probable cause hearings in the District Courts on complaints against Myers and Corey before they could be prosecuted in the Superior Court.

A comparison of the facts of the present case with those of the very few cases in which we have exercised our extraordinary powers under G. L. c. 211, § 3, to give relief with respect to interlocutory rulings in criminal cases leads us to conclude that this is not an instance where such relief should be granted.

(a)  This is not a case where "no other remedy is expressly

[2] See St. 1973, c. 1114, § 44, effective July 1, 1974, amending § 3 as part of a statutory revision to conform the General Laws to the new Massachusetts Rules of Civil Procedure, also effective July 1, 1974.

provided." The constitutional issue the plaintiff now asks us to decide is the same issue which he raised in the District Court, and in the Superior Court by his motion to dismiss.[3] If his motion were denied, and if he were thereafter tried in the Superior Court and found guilty, the plaintiff would have available to him an opportunity for appellate review of the ruling on his motion as a matter of right by saving and perfecting exceptions thereto. The single justice properly refused to stay proceedings in the Superior Court for the purpose of enabling the plaintiff to argue before the full court that he had no other remedy. The fact that the plaintiff's constitutional claims could be rendered moot if he were acquitted in the Superior Court would not, in our opinion, prejudice him in such a manner as to warrant the exercise of our "extraordinary" powers of review under G. L. c. 211, § 3. *Barber* v. *Commonwealth,* 353 Mass. 236, 239 (1967).

(b) In challenging the two-tier court system, one of the plaintiff's principal arguments is that it denies him the right to a speedy trial in violation of the Sixth Amendment to the United States Constitution. He appears to argue that this right is violated both by the requirement for an initial nonjury trial to a judge in the District Court and by the fact that even apart from the District Court proceeding "the time schedule in the Superior Court for [jury] trial of misdemeanors and less serious felonies is deplorable." The circumstances of this case suggest, however, that the plaintiff is in no position to raise this speedy trial claim. The plaintiff was tried in the District Court on September 6, 1973, within fifteen days after his arrest. His appeal taken on that date was entered in the Superior Court on September 10, 1973. The plaintiff then elected to proceed before the single justice of this court rather than to let his appeal take its course in the Superior Court. When that appeal was reached for trial in the Superior Court on November 15, 1973, he requested that the case not be tried

---

[3] See fn. 1, *supra.*

because of his petition pending before the single justice, and when the case was reached again in the Superior Court on March 6, 1974, he did not appear and was defaulted. He has never taken any action in the Superior Court to assert his right to speedy trial. The plaintiff's conduct at all stages of the proceedings indicates that either he or his counsel, or both, have adopted the strategy of delaying a jury trial in favor of their attempts to obtain an interlocutory ruling on the constitutional question they seek to test.

3. *Motion to Dismiss Petition.* When this case was reached for argument before the full court, the Commonwealth offered and argued a motion that the plaintiff's petition be dismissed because of his failure to appear in the Superior Court when his case was called for trial on his appeal on March 6, 1974, and his resulting default which continued at the time of the argument. As noted above, on filing the present petition the plaintiff had requested a stay of further proceedings on the complaint against him and the stay was denied. He was therefore required to appear for trial of his appeal when it was called in the Superior Court on March 6, 1974. The filing and pendency of his petition in the present case did not relieve him from the obligation to appear. It is not within his power to decide unilaterally that he will prosecute this civil action and, while doing so, fail, neglect or refuse to appear for trial in the Superior Court when required to do so. Under the terms of G. L. c. 278, § 18, on taking his appeal to the Superior Court he was released on personal recognizance "with condition to appear at the superior court on said return day [of the appeal] and at any subsequent time to which the case may be continued . . . and so from time to time until the final sentence, order or decree." He has violated that obligation and he is therefore not entitled to the review of interlocutory questions he now seeks. "By his voluntary act, which renders him unavailable to await the decision of the court, he has waived appellate rights." *Commonwealth* v. *Rezendes,* 353 Mass. 228 (1967). *Commonwealth* v. *Richards,* 1 Mass. App. Ct. 821 (1973).

4. *Conclusion.*   On the basis of our discussion above we conclude as follows: (a) that the petition in this case cannot be maintained as an application for an interlocutory appeal, (b) that it cannot be maintained as a petition for the exercise of this court's extraordinary powers under G. L. c. 211, § 3, and (c) that by reason of his failure to appear for trial when his case was called in the Superior Court the plaintiff is not entitled to any appellate relief from this court even if such relief were otherwise available to him.

## THE PLAINTIFF'S CONSTITUTIONAL CLAIMS.

Although for reasons already discussed the plaintiff is not entitled to relief in this case, we think that in view of the nature of the question which he attempted to raise and in view of the fact that the plaintiff's counsel appears determined to raise the same question in other cases,[4] we ought, as was done in *Wellesley College* v. *Attorney Gen.* 313 Mass. 722, 731 (1943), to express briefly our opinion upon

---

[4] The following are several other cases in which the plaintiff's counsel has raised substantially the same constitutional question which he is raising in the present case:

(1) *Scheller* v. *Burke,* Civil Action No. 73-428-G (D. Mass.), affirmed on January 3, 1974, by the United States Court of Appeals (1st Cir.) No. 73-1296.

(2) *Corcoran* v. *Hedges,* Civil Action No. 73-91-M (D. Mass.); appealed to the United States Court of Appeals (1st Cir.) No. 73-8074, and decided on January 4, 1974, by the following MEMORANDUM AND ORDER:

"Present counsel, representing various clients, seems determined to find a way to attack the Massachusetts so-called two tier system of criminal trials in the federal court without having to do so first in the state court. We decline to speculate on the anticipated advantages, if any, but we repeat that we are totally unsympathetic in the absence of convincing reasons.

"Absent undue delay the federal courts will not step in where procedures, available in the state court to raise the issues presented, are not pursued. Our ears are particularly closed when a party allegedly desiring speed, seeks it expeditiously in one area and not in another.

"The request for a certificate of probable cause is denied."

(3) *Almeida* v. *Lucey,* 372 F. Supp. 109, 111 (D. Mass. three-judge court, 1974), app. pending.

(4) *Whitmarsh* v. *Commonwealth,* No. 73-183 (Equity), Supreme Judicial Court for the county of Suffolk.

(5) *Costarelli* v. *Buckley,* No. 74-168 (Law), Supreme Judicial Court for the county of Suffolk.

the constitutional question that has been argued. *Simeone Stone Corp.* v. *Board of Appeals of Bourne,* 345 Mass. 188, 192 (1962). *Harvard* v. *Maxant,* 360 Mass. 432, 436-437 (1971). *Karchmar* v. *Worcester,* 364 Mass. 124, 136 (1973).

1. *Sixth Amendment Claims.* The plaintiff argues that our two-tier court system, under which he was first placed on trial before a District Court judge and then required to appeal to the Superior Court if he desired a trial de novo before a jury, violates the trial by jury and speedy trial provisions of the Sixth Amendment.[5] We have concluded above that on the facts of this case the plaintiff's argument relating to his right to a speedy trial is without merit and we will not discuss the claim further here. See *Barker* v. *Wingo,* 407 U. S. 514, 530-533 (1972).[6] What must still be considered is whether, as the plaintiff asserts, the two-tier court system violates a right of an accused purportedly guaranteed by the Sixth Amendment to have a jury trial "in the first instance." It is this assertion which is at the core of the plaintiff's constitutional challenge to that system.

This court has not heretofore considered the question whether our two-tier court system in and of itself violates the jury trial requirement of the Sixth Amendment[7] but it has considered the question in relation to the similar requirement included in art. 12 of the Declaration of Rights

---

[5] The pertinent language of the Sixth Amendment is: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed."

[6] The Supreme Court identified in that case several factors which the courts should assess or weigh when considering a claim of denial of the right to a speedy trial: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530. In the circumstances of the case before us it is clear that none of these factors can or should be weighed in favor of the plaintiff.

[7] In *Mann* v. *Commonwealth,* 359 Mass. 661, 667 (1971), we briefly considered the more limited question whether "the imposition of a greater sentence after a de novo trial unconstitutionally burdens . . . [a criminal defendant's] right to a jury trial," but there is no indication in the case whether Mann's contention that it did so was based on the Sixth Amendment or on art. 12 of the Massachusetts Declaration of Rights.

of the Massachusetts Constitution: "And the legislature shall not make any law that shall subject any person to a capital or infamous punishment, excepting for the government of the army and the navy, without trial by jury."[8] In *Jones* v. *Robbins,* 8 Gray 329 (1857), in which the principal question involved was whether a person could be sentenced to State prison without a grand jury indictment, the court said: "The last clause [of art. 12], which seems to have been added for greater caution, prohibiting the legislature from making any law which shall subject any person to a 'capital' or 'infamous punishment,' . . . is somewhat more explicit than the preceding clause 'judgment of his peers,' and may be equivalent to the clause in the sixth article of amendment of the Constitution of the United States, declaring that, 'in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury.' We believe it has been so practically understood; and where, by the terms of any law, a justice of the peace or police court has been authorized to hear and pass sentence, it has always been accompanied by a right of appeal. And we believe it has been generally understood and practised here and in Maine, and perhaps in other states having a similar provision, that as the object of the clause is to secure a benefit to the accused, which he may avail himself of or waive, at his own election; and as the purpose of the provision is to secure the right, without directing the mode in which it shall be enjoyed, it is not violated by an act of legislation, which authorizes a single magistrate to try and pass sentence, provided the act contains a provision that the party shall have an unqualified and unfettered right of appeal, and a trial by jury in the appellate court . . . . It appears to us, therefore, that such a provision is not void, as a violation of that clause, which, in

---

[8] The full text of that part of art. 12 relevant to this case reads as follows: "And no subject shall be arrested, imprisoned, despoiled, or deprived of his property, immunities, or privileges, put out of the protection of the law, exiled, or deprived of his life, liberty, or estate, but by the judgment of his peers, or the law of the land. And the legislature shall not make any law, that shall subject any person to a capital or infamous punishment, excepting for the government of the army and navy, without trial by jury."

criminal cases, secures to the accused a right of trial by jury." *Id.* at 341-342. In the more than 100 years since *Jones* v. *Robbins* was decided, we have never questioned this conclusion. See *Mann* v. *Commonwealth,* 359 Mass. 661, 666-667 (1971); *Commonwealth* v. *Britt,* 362 Mass. 325, 329-330 (1972).

The plaintiff concedes that this court has considered, and continues to consider, the two-tier court system as satisfying the applicable constitutional requirements of art. 12 of the Declaration of Rights. He argues, however, that the Sixth Amendment has traditionally been held to secure a criminal defendant in the Federal courts, other than one charged with a "petty offence," the right to a jury trial "from the first moment, and in whatever court, he is put on trial for the offence charged," *Callan* v. *Wilson,* 127 U. S. 540, 557 (1888), and that whatever the Sixth Amendment requires by way of a jury trial in the Federal system is now made applicable to the States through the Fourteenth Amendment.

In *Callan* v. *Wilson, supra,* involving a criminal prosecution in the District of Columbia, the court said at p. 557: "Except in that class or grade of offences called petty offences, which, according to the common law, may be proceeded against summarily in any tribunal legally constituted for that purpose, the guarantee of an impartial jury to the accused *in a criminal prosecution, conducted either in the name* [*of*], *or by or under the authority of, the United States,* secures to him the right to enjoy that mode of trial from the first moment, and in whatever court, he is put on trial for the offence charged. In such cases a judgment of conviction, not based upon a verdict of guilty by a jury, is void. To accord to the accused a right to be tried by a jury, in an appellate court, after he has been once fully tried otherwise than by a jury, in the court of original jurisdiction, and sentenced to pay a fine or be imprisoned for not paying it, does not satisfy the requirements of the Constitution" (emphasis supplied). It is clear from the italicized language that this decision, when rendered, was intended to apply only to Federal prosecutions and not to

State prosecutions. In reaching its decision the court noted the contrary language in *Jones* v. *Robbins,* 8 Gray 329, 341 (1857), but elected not to follow it, an action which did not affect the validity of this court's interpretation of the Massachusetts Constitution in the *Jones* case.

As the plaintiff points out, however, in *Duncan* v. *Louisiana,* 391 U. S. 145, 149 (1968), the Supreme Court held that the due process clause of the Fourteenth Amendment made applicable to the States the jury trial provision of the Sixth Amendment: "Because we believe that trial by jury in criminal cases is fundamental to the American scheme of justice, we hold that the Fourteenth Amendment guarantees a right of jury trial in all criminal cases which — were they to be tried in a federal court — would come within the Sixth Amendment's guarantee." Yet an examination of the concurring and dissenting opinions in that case indicates that the question immediately arising among the Justices was whether the court's holding meant or should mean that all prior decisions of the Federal courts interpreting the jury trial provision of the Sixth Amendment would be applicable in all respects and details to the States as well, a question to which the opinion of the court, written by Mr. Justice White, had given an ambiguous response in a footnote.[9]

Thus, Mr. Justice Black, with whom Mr. Justice Douglas joined, wrote in his concurring opinion: "The Court today

---

[9] 391 U. S. at 158-159, fn. 30, which states in pertinent part: "Louisiana also asserts that if due process is deemed to include the right to jury trial, States will be obligated to comply with all past interpretations of the Sixth Amendment, an amendment which in its inception was designed to control only the federal courts and which throughout its history has operated in this limited environment where uniformity is a more obvious and immediate consideration. In particular, Louisiana objects to application of the decisions of this Court interpreting the Sixth Amendment as guaranteeing a 12-man jury in serious criminal cases, *Thompson* v. *Utah,* 170 U. S. 343 (1898); as requiring a unanimous verdict before guilt can be found, *Maxwell* v. *Dow,* 176 U. S. 581, 586 (1900); and as barring procedures by which crimes subject to the Sixth Amendment jury trial provision are tried in the first instance without a jury but at the first appellate stage by de novo trial with a jury, *Callan* v. *Wilson,* 127 U. S. 540, 557 (1888). *It seems very unlikely to us that our decision today will require widespread changes in state criminal processes. First, our decisions interpreting the Sixth Amendment are always subject to reconsideration, a fact amply demonstrated by the instant decision.* In addition, most of the States have provisions for jury trials equal in breadth to the Sixth Amendment, if that amendment is construed, as it has been,

holds that the right to trial by jury guaranteed defendants in criminal cases in federal courts by Art. III of the United States Constitution and by the Sixth Amendment is also guaranteed by the Fourteenth Amendment to defendants tried in state courts. . . . I am very happy to support this selective process through which our Court has . . . held most of the specific Bill of Rights' protections applicable to the States to the same extent they are applicable to the Federal Government." *Id.* at 162-164. On the other hand, Mr. Justice Fortas, in his concurring opinion, expressed an opposing point of view: "But although I agree with the decision of the Court, I cannot agree with the implication, see . . . [391 U. S.] at 158-159, n. 30, that the tail must go with the hide: that when we hold, influenced by the Sixth Amendment, that 'due process' requires that the States accord the right of jury trial for all but petty offenses, we automatically import all of the ancillary rules which have been or may hereafter be developed incidental to the right to jury trial in the federal courts. I see no reason whatever, for example, to assume that our decision today should require us to impose federal requirements such as unanimous verdicts or a jury of 12 upon the States. We may well conclude that these and other features of federal jury practice are by no means fundamental — that they are not essential to due process of law — and that they are not obligatory on the States. . . . There is no reason whatever for us to conclude that . . . we are bound slavishly to follow not only the Sixth Amendment but all of its bag and baggage, however securely or insecurely affixed they may be by law and precedent to federal proceedings. . . . The Due Process Clause . . . does not command us rigidly and arbitrarily to impose the exact pattern of federal proceed-

---

to permit the trial of petty crimes and offenses without a jury. Indeed, there appear to be only four States in which juries of fewer than 12 can be used without the defendant's consent for offenses carrying a maximum penalty of greater than one year. Only in Oregon and Louisiana can a less-than-unanimous jury convict for an offense with a maximum penalty greater than one year. However 10 States authorize first-stage trials without juries for crimes carrying lengthy penalties; these States give a convicted defendant the right to a *de novo* trial before a jury in a different court" (emphasis supplied).

ings upon the 50 States." *Id.* at 213-214.[10] Mr. Justice Harlan, with whom Mr. Justice Stewart joined, wrote a dissenting opinion in which he stated: "[The Court] holds, for some reason not apparent to me, that the Due Process Clause incorporates the particular clause of the Sixth Amendment that requires trial by jury in federal criminal cases — including, as I read its opinion, the sometimes trivial accompanying baggage of judicial interpretation in federal contexts." *Id.* at 172. It has simply assumed that the question before us is whether the Jury Trial Clause of the Sixth Amendment should be incorporated into the Fourteenth, jot-for-jot and case-for-case, or ignored." *Id.* at 181.

There are numerous later statements by various Justices of the Supreme Court in a series of concurring and dissenting opinions on the question whether all Sixth Amendment Federal jury requirements are or are not, or should or should not be, applicable in their entirety to State criminal trials. See *Bloom* v. *Illinois,* 391 U. S. 194, 211, 213-214, 215 (1968); *Baldwin* v. *New York,* 399 U. S. 66, 74, 76-77 (1970); *Williams* v. *Florida,* 399 U. S. 78, 86, 102-103, 106, 122-123, 130-133, 136-138, 143 (1970); *Johnson* v. *Louisiana,* 406 U. S. 356, 369, 375, 388, 395-396 (1972); *Apodaca* v. *Oregon,* 406 U. S. 404, 406, 410-411, 414-415 (1972). See also *Codispoti* v. *Pennsylvania,* 418 U. S. 506, 534-535 (Rehnquist, J., dissenting) (1974). However, no useful purpose would be served by any tabulation of the position which each of the Justices took in any or all of the cases in which this subject was discussed. A reading of all the cases suggests to us that the meaning of the Sixth Amendment's jury trial provision — and perhaps also the specific instances of its application to the States — continues to be in flux. In both *Williams* v. *Florida, supra,* and *Apodaca* v. *Oregon, supra,* for example, the Supreme Court rejected what had been traditional interpretations of the Sixth Amendment jury trial provision in the Federal courts by holding that that clause did not require as a constitutional

---

[10] Mr. Justice Fortas's concurring opinion also applied to *Bloom* v. *Illinois,* 391 U. S. 194 (1968), and actually follows the court's opinion in that case.

matter in State or Federal courts either a twelve person jury or a unanimous verdict of guilty in certain serious criminal cases. In doing so the court in effect reversed several of its prior cases. See, e.g., *Thompson* v. *Utah,* 170 U. S. 343 (1898); *Maxwell* v. *Dow,* 176 U. S. 581, 586 (1900); *Andres* v. *United States,* 333 U. S. 740, 748-749 (1948). Cf. *Duncan* v. *Louisiana, supra,* at 158-159, n. 30, set forth in fn. 9 above.

It is clear that the Supreme Court is aware of the existence in several States of two-tier court systems such as we have in Massachusetts for the trial of less serious criminal offences, as the cited footnote from the *Duncan* case indicates. See *Williams* v. *Florida,* 399 U. S. 78, 137, 139, 141-143 (Harlan J., concurring in result) (1970); *Colten* v. *Kentucky,* 407 U. S. 104, 113-114 (1972). Indeed, in the *Colten* case, *id.* at 112-120, the court examined such systems at some length, setting forth the justifications for them offered by the States (*id.* at 114), and discussing what apparently was its own view of their advantages (*id.* at 118-119).[11] In light of these cases and of the highly uncertain state of the law on the subject, we do not believe that we are required to conclude either (a) that the Sixth Amendment would be interpreted at the present time by the Supreme Court to require a trial by jury in the first instance for all criminal offences, *Callan* v. *Wilson,* 127 U. S. 540 (1888),[12]

---

[11] "We are not persuaded, however, that the Kentucky arrangement for dealing with the less serious offenses disadvantages defendants any more or any less than trials conducted in a court of general jurisdiction in the first instance, as long as the latter are always available. Proceedings in the inferior courts are simple and speedy . . . . Such proceedings offer a defendant the opportunity to learn about the prosecution's case and, if he chooses, he need not reveal his own. He may also plead guilty without a trial and promptly secure a *de novo* trial in a court of general criminal jurisdiction. . . . The State has no such options. Should it not prevail in the lower court, the case is terminated, whereas the defendant has the choice of beginning anew. In reality his choices are to accept the decision of the judge and the sentence imposed in the inferior court or to reject what in effect is no more than an offer in settlement of his case and seek the judgment of judge or jury in the superior court, with sentence to be determined by the full record made in that court. We cannot say that the Kentucky trial *de novo* system, as such, is unconstitutional."

[12] We note that although this holding of *Callan* v. *Wilson, supra,* has been cited by the Supreme Court in a few of the opinions discussed above, the court has not indicated any opinion, either affirmative or negative, about it. See *Duncan* v. *Louisiana, supra,* at 158-159, fn. 30; *Williams* v. *Florida,* 399 U. S. 78, 137 (1970) (Harlan, J., concurring in judgment).

or (b) that even if that court did reaffirm this rule of the *Callan* case with respect to the Federal courts, it would apply such a requirement in equal fashion to the States. In sum, we believe that the Commonwealth's two-tier court system satisfies the jury trial requirement of the Sixth Amendment as applied to the States through the Fourteenth Amendment.[13]

2. *Fifth Amendment Claim.* The plaintiff also contends that the two-tier court system violates the double jeopardy clause of the Fifth Amendment, made applicable to the States through the Fourteenth. *Benton* v. *Maryland,* 395 U. S. 784 (1969). The principal thrust of his argument relates to the possible imposition of a higher sentence by the Superior Court in a de novo trial held on an appeal from the District Court: he claims first that this "threat of enhanced penalty" in the Superior Court "chills" a defendant's right to take an appeal, and, second, that the mere existence of authority in the Superior Court judge to impose a greater sentence in itself constitutes a violation of the double jeopardy clause.

The plaintiff's argument is not new to this court. In *Mann* v. *Commonwealth,* 359 Mass. 661 (1971), the same contentions of "chilling effect" (which is essentially a claim of denial of due process more than of violation of the double jeopardy clause) and enchanced penalty were raised and were resolved against the plaintiff's contention. *Id* at 662-665, 666-667. See *Lemieux* v. *Robbins,* 414 F. 2d 353, 354-356 (1st Cir. 1969), cert. den. 397 U. S. 1017 (1970) (Maine two-tier court system).[14] The plaintiff suggests these deci-

---

[13] See *Almeida* v. *Lucey,* 372 F. Supp. 109, 111, 112-113 (Tauro, J., dissenting) (D. Mass. three-judge court, 1974), app. pending.

We are aware that in *State* v. *Holliday,* 109 R. I. 93, 103-104 (1971), the Supreme Court of Rhode Island reached the opposite conclusion from ours, but for the reasons discussed above we do not agree with that court's opinion. Cf. *Manns* v. *Koontz,* 451 F. 2d 1344, 1345 (4th Cir. 1971); *Manns* v. *Commonwealth,* 213 Va. 322 (1972). See *Lemieux* v. *Robbins,* 414 F. 2d 353, 355-356 (1st Cir. 1969), cert. den. 397 U. S. 1017 (1970).

[14] As we said in the *Mann* case, 359 Mass. at 663, 664-665 (1971): "The petitioner complains that the [two-tier de novo] procedure has a chilling effect on his right of appeal. 'In answering this question we must have in mind that a

sions should not control here because both courts incorrectly relied on *North Carolina* v. *Pearce,* 395 U. S. 711 (1969), with respect to the double jeopardy claims raised in the cases before them; it is the plaintiff's position that the *Pearce* case, which involved the resentencing of a defendant who had perfected a successful appeal and had been retried and ultimately reconvicted, is entirely distinguishable from the case at bar. We believe, however, that *Colten* v. *Kentucky,* 407 U. S. 104 (1972), has rejected that position.

In the *Colten* case the defendant was tried, convicted and fined for disorderly conduct before an inferior court without a jury pursuant to the Kentucky two-tier court system for less serious criminal offences. He exercised his right to "appeal" to a higher court for a trial de novo before a jury, at which trial he was again convicted and a higher fine was imposed. Like the plaintiff in the case before us, he argued that the State two-tier court system was constitutionally "infirm" because of the judge's power to impose a higher sentence in the second-tier trial, basing his argument in part on the Fifth Amendment's double jeopardy clause. The Supreme Court briefly disposed of his claim: "Colten's alternative contention is that the double jeopardy clause prohibits the imposition of an enhanced penalty upon reconviction. The *Pearce* Court rejected the same contention in the context of that case, 395 U. S. at 719-720. Colten urges that his claim is stronger because the Kentucky system forces a defendant to expose himself to jeopardy as a price for securing a trial that comports with the Constitution. That was, of course, the situation in

---

defendant gives up nothing by going to trial in the district court. . . . Looking at the total circumstances, where the state offers the defendant a full trial, with full right of appeal therefrom, in the Superior Court, we do not think it unreasonable for it to restrict the appeal from the district court in the sense here complained of. . . . The state's two step procedure has a legitimate purpose.' *Lemieux* v. *Robbins,* . . . [*supra,* at] 355-356. . . . [T]he reasoning in the *Lemieux* case is applicable to the instant case. A defendant not only 'gives up nothing by going to trial in the district court' but he actually gains the distinct advantage of a preview of the prosecution's case without having to disclose his own. If he is found guilty he can appeal. If he is found not guilty that is the end of the case because 'double jeopardy' precludes an appeal by the State."

*Pearce,* where reversal of the first conviction was for constitutional error." 407 U. S. at 119.

Despite the plaintiff's assertions to the contrary, it seems clear that the *Colten* case is indistinguishable from the case before us and that its rejection of the double jeopardy claim governs here.

## DISPOSITION.

In accordance with the conclusion reached in par. 4 of the first section of this opinion, an order is to be entered by the single justice dismissing this petition.

*So ordered.*