BARBARA BRUNSON & another *vs.* COMMONWEALTH.

Suffolk.    March 6, 1975. — November 18, 1975.

Present: TAURO, C.J., QUIRICO, BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Supreme Judicial Court,* Superintendence of inferior courts. *Constitutional Law,* Due process of law, Equal protection of laws. *Jury and Jurors.    Grand Jury.    Boston.*

This court declined to exercise its extraordinary power of "general superintendence" under G. L. c. 211, § 3, as amended by St. 1973, c. 1114, § 44, upon a report without decision of a complaint in county court seeking dismissal of 1973-1974 Suffolk County indictments pending against the plaintiffs on the ground that the 1973 annual Boston jury list from which the grand jurors and traverse jurors were drawn was unconstitutionally prepared by

reason of the fact that "[w]omen were intentionally underrepresented" thereon, because of changes in circumstances since the report, particularly the decision in *Daniel* v. *Louisiana,* 420 U.S. 31 (1975), holding that the decision in *Taylor* v. *Louisiana,* 419 U.S. 522 (1975), that the systematic exclusion of women from jury panels was unconstitutional, was not to be applied retroactively, and the changes in the method of selecting a traverse jury in Suffolk County undertaken by the Chief Justice of the Superior Court and conforming to G. L. c. 234, § 4, by one of which the plaintiffs may be tried.   [111-114]

Although under G. L. c. 277, § 2, Boston furnished thirty-two of the thirty-five veniremen called for the empanelling of the grand juries for the 1973-1974 court year in Suffolk County, and "[w]omen were intentionally underrepresented" on the annual Boston jury lists from which most of the grand jurors were drawn and made up about a third of the grand juries which indicted plaintiffs seeking relief by a complaint under G. L. c. 211, § 3, as amended, on constitutional grounds, this court was of the opinion that the rule of *Taylor* v. *Louisiana,* 419 U.S. 522 (1975), that the systematic exclusion of women from jury panels was unconstitutional, was not to be applied retroactively to the indictments against the plaintiffs, which were returned before the decisions in the *Taylor* case.   [114-115]

Although women constituted about 54 % of the Boston resident list, where it appeared that women made up about 26 % of Boston's 1973 jury list and about 33 % of Suffolk County grand juries which indicted plaintiffs seeking relief by way of a complaint under G. L. c. 211, § 3, as amended, on the ground that the manner in which the jury list was prepared violated the applicable sections of c. 234, this court was of opinion that the representation of women was substantial and sufficient to preclude any conclusion that the venires of grand jurors were not drawn from lists fairly representative of the community [115-120]; the facts in the case did not compel a conclusion that the plaintiffs suffered any prejudice solely by reason of the alleged violations [120].

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on December 13, 1974.

The case was reserved and reported by *Hennessey,* J.

*Barbara A. Shapiro* (*Margaret A. Burnham* with her) for the plaintiffs.

*D. Lloyd Macdonald,* Assistant District Attorney, for the Commonwealth.

*William A. Nelson & Malvine Nathanson,* for the Massachusetts Defenders Committee, amicus curiae, submitted a brief.

QUIRICO, J. This is a complaint by Barbara Brunson and Stephen Ware asking this court "to issue a writ of general superintendence" under G. L. c. 211, § 3, as amended by St. 1973, c. 1114, § 44. The primary relief sought by the plaintiffs is the dismissal of indictments pending against them because of alleged constitutional and statutory irregularities in the preparation of the annual jury lists for the city of Boston. These lists are the principal source of members of venires for grand jurors and traverse jurors in Suffolk County.[1] The alternative relief sought by the plaintiffs, in the event the indictments are not dismissed, is to strike the venires of traverse jurors drawn from Boston's 1973 annual jury list, to refrain from further use of that list, and to "reconstitute the [Boston] Jury List in a nondiscriminatory manner."

The complaint was submitted to a single justice of this court on the basis of the pleadings and a statement of agreed facts, without evidence. The single justice reserved and reported the case to this court without decision. For reasons discussed below, we hold that this is not presently an appropriate case for the exercise of our power under G. L. c. 211, § 3, for the "general superintendence of all courts of inferior jurisdiction."

The following is a summary of the pertinent proceedings in the Superior Court. The plaintiff Barbara Brunson was indicted in September, 1973, for the crime of possession of heroin with intent to distribute it; the

---

[1] General Laws c. 277, § 2, as appearing in St. 1966, c. 415, § 2, provides that each grand jury venire for Suffolk County shall be "for thirty-five veniremen of whom thirty-two shall be from Boston and one each from Chelsea, Revere and Winthrop." Customarily, approximately 88% of the traverse jurors for Suffolk County are provided by the city of Boston.

plaintiff Stephen Ware was indicted in March, 1974, for the crimes of armed robbery and assault with intent to commit robbery. The crime charged against Brunson is in no way related to those charged against Ware, and the two persons will be tried separately, when tried.

As to each indictment the defendant named therein filed a motion asking that the indictment be dismissed on the ground that the grand jury which returned it "was selected in violation of the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution." The motions also asked, in the alternative, that the court "strike the array of traverse jurors" drawn or to be drawn for the trial of the indictments. The basic grounds for the motions were substantially the same as those on which the plaintiffs now seek relief by their complaint to this court. After a hearing at which oral testimony and other evidence was received, a judge of the Superior Court denied the motions and the plaintiffs duly excepted thereto. The judge also denied a motion by the plaintiffs that he make an interlocutory report to this court for appellate review of his rulings denying the motions to dismiss the indictments and for other relief. G. L. c. 278, § 30A, inserted by St. 1954, c. 528.

The indictments were scheduled for trial in December, 1974. The motions described above were heard in the Superior Court on December 2, 1974, and denied on December 10, 1974. The cases have not yet been tried on their merits.

The statement of agreed facts submitted to the single justice relates principally to the manner in which Boston's annual jury lists, required by G. L. c. 234, § 4, as amended, were prepared for the several years in question, with particular emphasis on the representation thereon of women and persons in certain age brackets. We summarize the agreed facts only to the extent necessary for the purposes of this opinion. Certain other

material presented to us is not properly before us, and we therefore do not consider it.[2]

Each year the election department of the city of Boston adds about 5,000 new names to its jury list. These names remain on the list for three years unless the persons are called in that period for jury service. The basic source of those 5,000 new names each year is the annual list of residents of the city who are seventeen years of age and over. That list has about 450,000 names on it, and the number is reduced to about 330,000 by eliminating the names of all persons exempted from jury service by G. L. c. 234, § 1, and those who are over sixty-eight years of age. The list is again reduced to about 30,000 names by drawing "a certain proportion of names from each ward of the City."[3] This is done by a computer which is programmed to draw two men for every woman. The list is then again reduced to approximately 20,000 names by eliminating the names of all persons who have served as jurors within the last three years, who are presently on the jury list, or who have disabilities which preclude them from serving, the resulting list also having "a certain proportion of names from each ward."[3] Each of the 20,000 persons whose names are on this list are then given notice to appear at the office of the election commission. After giving the

[2] Because this case was reported to the full court on the basis of the complaint and a statement of agreed facts, the following additional material is not properly before us: (a) a transcript of a hearing in the Superior Court on the motions to dismiss the indictments and for certain other relief, (b) references to that transcript in the briefs, and (c) a twenty-eight page document incorporated in the record appendix of the plaintiffs and entitled "REPORT OF JURY STUDY, SUFFOLK COUNTY." This appears to be a self-serving document, prepared by counsel for Brunson, purporting to report on a study unilaterally and voluntarily undertaken at the request of Brunson, dated before the hearing in the Superior Court, and referred to in the transcript of that hearing, but not offered or admitted in evidence.

[3] These words quoted from the statement of agreed facts are not further defined therein or in any other part of the record.

breakdown for the number of men and women thus notified to appear in the years 1963 (15,100 men and 2,590 women), 1967 (21,950 men and 7,200 women), and 1972 (16,225 men and 5,850 women), the statement of agreed facts reads: "Women were intentionally under-represented by the Election Department in these years." Only about 8,000 to 10,000 appear, fill out required questionnaires, and are interviewed by a member of the commission who determines whether the person is qualified for jury service. This process results in the selection of the 5,000 new names ultimately to be added to the jury list in that year.

Women constituted 54.7 % of the population of Suffolk County according to the 1970 United States Census, and 54.5 % of the persons on the 1973 Boston resident list. They constituted 26.6 % of the persons on Boston's 1973 annual jury list from which 88 % of the traverse jurors for Suffolk County were drawn for the court year from September, 1973, through June, 1974. They constituted 29.5% of the traverse jurors for Suffolk County for that court year, and 30% for the month of December, 1974.

The parties also agreed on statistics apparently intended to demonstrate that persons in several age groups were underrepresented on Boston's 1973 annual jury list and in the number of persons summoned to serve as grand jurors and traverse jurors in Suffolk County for the 1973-1974 court year. However, no argument is made in the plaintiffs' brief as to this point, and we therefore treat any issue based thereon as waived. S.J.C. Rule 1:13, 351 Mass. 738 (1967).

1. *Relief under G. L. c. 211, § 3.* General Laws c. 211, § 3, gives this court power of "general super-intendence of all courts of inferior jurisdiction to correct and prevent errors and abuses therein *if no other remedy is expressly provided*" (emphasis supplied).

Basically the plaintiffs are challenging the manner in which the grand jurors who returned the indictments against them were selected, and the manner in which the

jurors before whom they are to be tried will be selected. Such challenges are expressly provided for in G. L. c. 277, § 47A, inserted by St. 1965, c. 617, § 1, the pertinent part of which is the following: "The pleadings in criminal proceedings shall be the indictment or complaint, and the pleas of not guilty, guilty and nolo contendere. *All* other pleas, and demurrers, *challenges to the array and to the manner of selection of grand or traverse jurors,* and motions to quash are hereby abolished, and any defenses and objections, which could have been raised before trial by one or more of them prior to October fourth, nineteen hundred and sixty-five, *shall be raised only by motion to dismiss or by a motion to grant appropriate relief . . ..* Any defense or objection which is capable of determination without the trial of the general issue may be raised before trial by motion. *Defenses and objections based on defects in the institution of the prosecution* or in the indictment or complaint, other than a failure to show jurisdiction in the court or to charge an offense, *may be raised only by motion before trial*" (emphasis supplied).

As already noted above, the plaintiffs, presumably acting under G. L. c. 277, § 47A, filed motions to dismiss the indictments returned by the grand jury, and to "strike the array of traverse jurors and direct the clerk to issue new venires for jurors to be drawn from a constitutionally prepared list," and the judge denied the motions on December 10, 1974. On the same date the judge also denied the plaintiffs' request that he report his ruling to this court for interlocutory review under G. L. c. 278, § 30A. This left the plaintiffs in the position where the only appellate review available to them on the denial of their motions to dismiss would be after trial of their cases on the merits, and as a part of the appeal from any other rulings made before or during trial.

On December 13, 1974, the plaintiffs filed their present complaint for relief under G. L. c. 211, § 3. The parties and the single justice then handled the matter with

dispatch as indicated by the following sequence of events. The parties filed their statement of agreed facts on December 20, and their statement of agreed contents of the record on December 27, 1974. The single justice reserved and reported the case to the full court on January 14, 1975, and on the same date the clerk of this court for Suffolk County gave counsel for the plaintiffs notice of the assembly of the record on appeal. These steps reflected the desire of both sides to the controversy to obtain an early decision on the issues by the full court, the plaintiffs being concerned primarily with the possibility of obtaining a dismissal of the indictments without first being subjected to trial thereon, and the prosecution being concerned with the possibility that many other untried indictments might be made the targets of similar motions to dismiss.

In the circumstances existing when the single justice reported this case to the full court it appeared to be an appropriate case for the existence of our extraordinary power under G. L. c. 211, § 3, notwithstanding the availability of a remedy in the Superior Court expressly provided by G. L. c. 277, § 47A, by way of a motion to dismiss the indictments. For examples of cases in which we have granted relief under G. L. c. 211, § 3, see *Gilday* v. *Commonwealth,* 360 Mass. 170, 171 (1971), *Myers* v. *Commonwealth,* 363 Mass. 843, 844 (1973), and *Corey* v. *Commonwealth,* 364 Mass. 137, 138 (1973). See also *Lataille* v. *District Court of E. Hampden,* 366 Mass. 525, 526-527 (1974).

The appropriateness of the case for relief under G. L. c. 211, § 3, was enhanced when, on January 21, 1975, the United States Supreme Court rendered its decision in *Taylor* v. *Louisiana,* 419 U.S. 522 (1975), involving the systematic exclusion of women from jury service. However, on January 27, 1975, the same court held in *Daniel* v. *Louisiana,* 420 U.S. 31 (1975), that the rule laid down in the *Taylor* case did not apply retroactively. Both decisions are further discussed below.

We believe that because of changes in circumstances since this case was reported to the full court, particularly the effect of the *Daniel* decision and the effect of changes in the method of selecting traverse jurors in Suffolk County as discussed later in this opinion, we should not presently exercise our extraordinary power under G. L. c. 211, § 3. *Barber* v. *Commonwealth,* 353 Mass. 236, 239 (1967). *Enbinder* v. *Commonwealth,* 361 Mass. 871 (1972). *Molesworth* v. *Municipal Court of the City of Boston,* 364 Mass. 830 (1973). *Whitmarsh* v. *Commonwealth,* 366 Mass. 212, 215 (1974). *Costarelli* v. *Municipal Court of the City of Boston,* 367 Mass. 35, 41 (1975). The present complaint is therefore to be dismissed and the jury questions left for ultimate review on appeal, if any, after trial of indictments.

2. *Interim Developments Relating to Traverse Jurors.* The plaintiffs entered their complaint in this case on December 13, 1974. By its decision in *Taylor* v. *Louisiana,* 419 U.S. 522, handed down on January 21, 1975, the United States Supreme Court (at 526-530) reviewed its frequent holdings that fundamental to the right of jury trial guaranteed by the Sixth Amendment to the United States Constitution is the requirement that grand juries and trial juries be selected at random from a fair cross section of the community. The court then stated (at 531) that "the fair cross section requirement is violated by the systematic exclusion of women, who in the judicial district involved here amounted to 53% of the citizens eligible for jury service. This conclusion necessarily entails the judgment that women are sufficiently numerous and distinct from men and that if they are systematically eliminated from jury panels, the Sixth Amendment's fair-cross-section requirement cannot be satisfied."

The parties have stipulated that the Chief Justice of the Superior Court took the following action subsequent to the decision in *Taylor* v. *Louisiana, supra:* (1) On January 22, 1975, he instructed court officers in charge of the jury pool that from that day on they were to send

equal numbers of men and women to court rooms when a jury panel was to be summoned; (2) on January 29, 1975, he instructed the civil and criminal clerks for Suffolk County to cancel and declare void the writs of venire facias already issued for trial jurors for the month of March, specifying that ninety-seven women and eighty-three men be drawn as jurors, such numbers reflecting the 54 % to 46 % ratio of women to men in Suffolk County; and (3) on January 29, 1975, he wrote to the appropriate officials of the city of Boston, reviewing the action described above, suggesting that the procedure to be followed in complying with the writs of venire facias for March continue until September, 1975, and acknowledging his understanding, based on a meeting with city officials, that "the September 1975 Boston jury list is to be selected by a random procedure drawn from the list of Boston's inhabitants."

If the plaintiffs are hereafter put to trial before a jury, the veniremen available to them will have been chosen in large part (about 88 %) from a Boston jury list prepared in accordance with the instructions and suggestions given by the Chief Justice of the Superior Court as described in the preceding paragraph of this opinion. Those instructions and suggestions are in substantial accord with G. L. c. 234, § 4, as amended by St. 1973, c. 1059, prescribing the manner in which jury lists are to be prepared. We cannot properly assume, and we do not assume, that women or persons in the age groups of the plaintiffs will be intentionally underrepresented on jury lists thus prepared, or that such lists will not represent a fair cross section of the community. There is no current necessity for us to grant any relief with respect to any venires of traverse jurors heretofore drawn from Boston's 1973 jury list. There is nothing before us requiring any order, ruling or judgment with reference to any Boston jury list for any year after 1973.

3. *Dictum Concerning Grand Jury.* We have concluded above that the complaint is to be dismissed.

Although that was dispositive of this case, we then pointed out that, in any event, remedial steps taken since the entry of this complaint make it unnecessary to consider the questions originally raised concerning traverse jurors and that such questions are not likely to recur. However, the questions raised by the plaintiffs concerning the grand jury and the validity of the indictments returned by the grand jury are likely to recur in this and perhaps in other cases. We therefore think that we ought, as was done in *Wellesley College* v. *Attorney Gen.* 313 Mass. 722, 731 (1943), to express briefly our opinion thereon.

The plaintiffs urge two separate grounds in support of their motions to dismiss the indictments against them, the first a constitutional ground, and the second a statutory ground. Common to the argument on both grounds is the fact that under G. L. c. 277, § 2, the city of Boston furnishes thirty-two of the thirty-five veniremen called for the empanelling of each grand jury in Suffolk County, and the further fact, to the extent stipulated in the parties' statement of agreed facts, that "[w]omen were intentionally underrepresented" on the annual jury lists of the city of Boston.

The plaintiffs argue that the manner in which the pertinent Boston jury lists were prepared violates the Sixth and Fourteenth Amendments to the Constitution of the United States, and that such violation requires the dismissal of the indictments. We do not agree.

The plaintiffs place great reliance on the decision in *Taylor* v. *Louisiana,* 419 U.S. 522 (1975), which held, inter alia, at 537: "Accepting as we do, however, the view that the Sixth Amendment affords the defendant in a criminal trial the opportunity to have the jury drawn from venires representative of the community, we think it is no longer tenable to hold that women as a class may be excluded or given automatic exemptions based solely on sex if the consequence is that criminal jury venires are almost totally male." It must be noted from the quoted

language that the present case differs from the *Taylor* case in two respects: (1) the *Taylor* case involved traverse jurors and we are here presently involved with grand jurors; and (2) the *Taylor* case involved the almost total exclusion of women from jury service,[4] whereas in the present case women made up 26.6 % of the 1973 Boston jury list, and 29.5 % of the traverse jurors drawn for service in Suffolk County for the 1973-1974 court year, 34 % and 30 % respectively of the grand juries which indicted Brunson and Ware.

If we assume for the purposes of the present discussion, but without so deciding, that the constitutional rule declared by the *Taylor* case applies equally to grand juries as it does to petit juries, and that the stipulated intentional underrepresentation of women on the Boston jury lists is a violation of that constitutional rule despite the fact that women constituted 26.6 % of the persons on the 1973 jury list, 29.5 % of the Suffolk County traverse jurors for the 1973-1974 court year, and 34 % and 30 % respectively of the two indicting grand juries, we are brought squarely to the question whether the rule of the *Taylor* case should be applied retroactively in this case in view of the later decision in *Daniel* v. *Louisiana*, 420 U.S. 31, released on January 27, 1975. The plaintiffs argue that it should be so applied. We hold that if the rule of the *Taylor* case is otherwise applicable to the facts of the present case, it should not be applied retroactively to this case for all of the same reasons that it was denied retroactive effect in the *Daniel* case.

Whether any particular new constitutional rule in the field of criminal law should be applied retroactively or

---

[4] In the *Taylor* case, which involved a judicial district consisting of two parishes, 53 % of the persons eligible for jury service in the district were women. In the particular parish involved, no more than 10 % of the persons on the jury wheel were women, of the 1,800 persons drawn to fill petit jury venires in the pertinent year, only twelve were women, and of the 175 persons on the venire drawn for the month of the trial in question, no women were included.

prospectively has been the subject of discussion in many decisions by the United States Supreme Court. *Linkletter* v. *Walker*, 381 U.S. 618, 622-640 (1965). *Tehan* v. *United States ex rel. Shott*, 382 U.S. 406, 409-419 (1966). In *Johnson* v. *New Jersey*, 384 U.S. 719, 726-735 (1966), the court, after citing the *Linkletter* and *Tehan* cases, said, at 726-727: "These cases establish the principle that in criminal litigation concerning constitutional claims, 'the Court may in the interest of justice make the rule prospective . . . where the exigencies of the situation require such an application.' 381 U.S., at 628; 382 U.S., at 410." In *Stovall* v. *Denno*, 388 U.S. 293, 296-297 (1967), the court cited these same cases and then said: "The criteria guiding resolution of the question implicate (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." This language quoted from the *Stovall* case has been repeated with approval in later decisions, including *DeStefano* v. *Woods*, 392 U.S. 631, 633 (1968), *Desist* v. *United States*, 394 U.S. 244, 249 (1969), and *Daniel* v. *Louisiana*, 420 U.S. 31, 32 (1975). This court has also quoted the same language most recently in *Stokes* v. *Commonwealth*, 368 Mass. 754, 764-765 (1975).

No useful purpose would be served by prolonging this discussion, which is intentionally identified as dictum in this opinion, by further discussion of the varying situations in which a new constitutional rule should be applied retroactively or prospectively. We believe that the rule of the *Taylor* case should not be applied retroactively on the facts of the case before us.

Finally, the plaintiffs argue that the manner in which the pertinent Boston jury lists were prepared violated the applicable sections of G. L. c. 234, with particular reference to the action of the election department in causing the names of two men to be placed on the lists for the name of each woman placed thereon. Despite

the express stipulation that "[w]omen were intentionally underrepresented by the Election Department" in preparing the annual jury lists, other parts of the statement of agreed facts permit an argument that women were treated differently in part because of special language of applicable jury service statutes peculiarly affecting women.[5] However, in the view which we take of this case with reference to grand jurors, it becomes unnecessary to determine the precise motive of the officials in determining the numbers of men and women to be added to the annual jury lists.

We note at the outset of this discussion that there is nothing in the record before us to demonstrate whether or how the plaintiffs were prejudiced by the underrepresentation of women on the annual jury lists for Boston. The plaintiffs contend that they need not show actual prejudice, and that it is enough to show the facts stipulated in the statement of agreed facts about the process which resulted in fewer women appearing on the jury list than men. We do not agree with that contention.

This is not a case where, as in *Taylor* v. *Louisiana, supra,* all or practically all women were excluded from the basic jury lists. In the present case, 26.6 % of the names on the pertinent annual jury lists were those of women, and 29.5 % of all traverse jurors for Suffolk County for the 1973-1974 court year were women. By G. L. c. 277, § 3, grand jurors are "drawn, summoned and returned in the same manner as traverse jurors," and from the same basic jury lists. Thus drawn the Brunson grand jury included 34 % women and the Ware grand jury included 30 % women. These results indicate a substantial representation of women on the annual jury

---

[5] General Laws c. 234, § 1, formerly exempted "women trained nurses; women assistants in hospitals; [and] women attendant nurses." By St. 1969, c. 148, § 1, these exemptions were extended to men. Also, G. L. c. 234, § 1, formerly exempted "mothers of children under sixteen years of age or women having custody of such children." By St. 1973, c. 582, § 1, these exemptions were repealed.

lists, on the lists of traverse jurors, and on the lists of grand jurors. The representation is sufficient, in our opinion, to preclude any conclusion that the venires of grand jurors were not drawn from lists which were fairly representative of the community.

The facts of this case do not compel a conclusion that the plaintiffs suffered any prejudice solely by reason of the alleged violation of the applicable statutes in preparing Boston's jury lists. The probability of prejudice is considerably more remote when we consider the function of a grand jury as contrasted to that of a petit jury. The grand jury is an investigatory and accusatory body only. It cannot and does not determine guilt. Only a petit jury may determine the guilt or innocence of a defendant, and it can find a defendant guilty only by a unanimous vote of all twelve jurors. By contrast, a grand jury may return an indictment by the vote of a majority of their entire membership of twenty-three persons. Whereas a single negative vote may prevent a petit jury from convicting a defendant, a much higher number of negative votes is required to prevent a grand jury from returning an indictment. The latter number will vary, depending on the number of grand jurors, and it may be as high as twelve if all twenty-three grand jurors are participating.

If the question were directly before us whether the indictments against the plaintiffs should be dismissed because of the alleged statutory violations in preparing the Boston jury lists, we would hold that they should not be dismissed; but for reasons already stated above, that question is not now before us.

4. For the reasons stated in part 1 of this opinion, the complaint in this case is hereby dismissed.

*So ordered.*