### COMMONWEALTH *vs.* KEVIN V. NOBLE.

Norfolk. December 11, 1998. - February 18, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Self-Defense. Practice, Criminal,* Instructions to jury. *Grand Jury. Due Process of Law,* Grand jury proceedings. *Trespass.*

In the circumstances of a murder case in which the defendant had strangled his brother with a headlock, the defendant was entitled to an instruction to the jury on the use of nondeadly force in self-defense; the absence of such an instruction deprived the defendant of the jury's consideration of a substantial part of his defense, creating a substantial risk of a miscarriage of justice: a new trial was required. [46-47]

The evidence presented to a grand jury in a murder case was sufficient to warrant a conclusion of probable cause and the integrity of the proceedings was not impaired, and the prosecutor was not required on his own initiative to provide the grand jury with instructions on the elements of murder in the first and second degree. [47-48]

At the retrial of a murder case, the judge, with reference to G. L. c. 266, § 120 (trespass), should instruct the jury on the factors used to determine whether a person is unlawfully present in a dwelling, in connection with his instruction based on G. L. c. 278, § 8A, on the absence of a duty to retreat from a person unlawfully in one's dwelling. [48-49]

INDICTMENT found and returned in the Superior Court Department on August 10, 1994.

The case was tried before *Julian T. Houston,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Carol A. Donovan,* Committee for Public Counsel Services (*Beverly J. Cannone,* Committee for Public Counsel Services, with her) for the defendant.

*Brian A. Wilson,* Assistant District Attorney, for the Commonwealth.

*Michael J. Sullivan,* District Attorney, & *Robert C. Thompson,* Assistant District Attorney, for the District Attorney for the Plymouth District, amicus curiae, submitted a brief.

ABRAMS, J. The defendant, Kevin V. Noble, has appealed from

his conviction of murder in the second degree. We granted his application for direct appellate review. The defendant's principal contention is that the trial judge erred in his self-defense instructions. The defendant also argues that his motion to dismiss the indictment should have been allowed because the grand jurors were not informed of the elements of murder in the first degree. We affirm the denial of the motion to dismiss. We conclude that the judge committed reversible error in his instructions to the jury on the law of self-defense.

The charge against the defendant stemmed from an incident that occurred on June 24, 1994. The defendant lived in the basement apartment of his brother David's home. The defendant was playing his stereo loudly, disturbing David. David went downstairs leaving his girl friend in his (David's) apartment. David told the defendant to lower the volume. David's girl friend heard the two men yelling. She then heard "banging noises." She went downstairs. She saw the defendant on top of his brother. The defendant had his brother in a headlock with his arm around David's neck. The defendant was strangling David. David's girl friend said that the defendant appeared to be "using all his might." He appeared to be using "every bit of strength he had."

The girl friend yelled to the defendant, "Stop. Get off him. You're strangling him. You're killing him." The defendant made no response. He continued to strangle David. She yelled that David was turning blue. The defendant again made no response. She saw the defendant give David three "really, really tight jerks." The defendant got off David and said, "I don't care. It was self-defense." When the defendant released his hold, the girl friend unsuccessfully attempted to resuscitate David. ·

1. *Self-defense instruction.* The defendant's theory at trial was self-defense. He testified that his brother, who was slightly taller and much heavier, attacked him after complaining about the volume of the stereo. The defendant also stated that he did not intend to kill his brother and that he was frightened of him. The judge instructed the jury on the use of deadly force in self-defense.                    ·

The defendant complains that the judge failed also to charge the jury on the use of nondeadly force in self-defense. The defendant raises this argument for the first time on appeal. Although defense counsel objected at the close of the charge and the supplementary charge, the objections did not focus on

the lack of a nondeadly force instruction.[1] Defense counsel also did not submit a proposed jury instruction on nondeadly force. Thus, the judge was not given an opportunity to rectify the error. *Commonwealth* v. *Preziosi*, 399 Mass. 748, 751 (1987). The error was not preserved by objection.

We consider whether the defendant was entitled to a nondeadly force instruction and agree he was. In construing the necessity for a nondeadly self-defense instruction, we view the evidence in the light most favorable to the defendant. See *Commonwealth* v. *Pike*, 428 Mass. 393, 396 (1998); *Commonwealth* v. *Reed*, 427 Mass. 100, 102-103 (1998), and cases cited. Deadly force — force intended or likely to cause death or serious bodily harm — can be used in self-defense only on a reasonable belief that one is in imminent danger of death or serious bodily harm. See *Commonwealth* v. *Cataldo*, 423 Mass. 318, 321 (1996); *Commonwealth* v. *Klein*, 372 Mass. 823, 827 (1977).

"An individual may use nondeadly force in self-defense when he has a reasonable concern over his personal safety." *Commonwealth* v. *Baseler*, 419 Mass. 500, 502-503 (1995) (holding that, when a defendant is charged with assault and battery by means of a dangerous weapon and assault and battery, judge must instruct on self-defense relating to both deadly and nondeadly force). Nondeadly force, such as the force of one's fists, hands, and arms, is considered to be nondeadly even if a death results. The right to use nondeadly force in self-defense arises at a lower level of danger than the right to use a weapon, which is ordinarily considered to be deadly force. *Id.* at 502. See *Cataldo, supra*; *Klein, supra*.

The defendant presented evidence that he did not intend to kill or seriously harm David and that the force he used was unlikely to do so.[2] There was evidence the defendant was frightened of his brother, who was taller and heavier than the defendant. It was for the jury to determine whether the headlock used by the defendant was deadly or nondeadly force. *Cataldo, supra* at 323. If the force was intended or likely to cause death, then the defendant was entitled to use it only if he reasonably believed he was in danger of death or serious bodily harm. If the force used by the defendant was nondeadly, the defendant had to reasonably fear for his personal safety. The judge

---

[1] Appellate counsel was not trial counsel.

[2] There was no evidence that the defendant used a weapon.

instructed the jurors only on deadly force. That was error. In addition to his charge on the use of deadly force in self-defense, the judge also should have instructed the jury on the use of nondeadly force in self-defense. Thus, the jurors were not instructed correctly on self-defense.

Because there was error, we must determine whether that error created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Pares-Ramirez*, 400 Mass. 604, 609 (1987), citing *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). We examine the jury instructions in their entirety "to determine their probable impact on the jury's perception of the fact-finding function." *Commonwealth* v. *Mejia*, 407 Mass. 493, 495 (1990).

The judge's instructions removed from the jurors' consideration the issue whether the defendant used nondeadly force in response to a reasonable fear for his safety. That error substantially undermined the defendant's claim of self-defense and also deprived him of jury consideration of a substantial part of his defense. See *Commonwealth* v. *Thomas*, 401 Mass. 109, 118-119 (1987) (new trial required where there was a failure to instruct on requirement of scienter); *Commonwealth* v. *Pickles*, 393 Mass. 775, 779-780 (1985) (new trial required where instructions created jury confusion on both burden of proof and elements of crime). We conclude that the judge's failure to instruct on nondeadly force created a substantial risk of a miscarriage of justice.

2. *Grand jury instructions.* The defendant moved to dismiss the indictment charging murder in the first degree. Invoking the protection of art. 12 of the Massachusetts Declaration of Rights, he argued that, without instructions on the elements of murder, the grand jurors could not perform their function of determining whether and for what offense to indict.[3] The motion judge denied the defendant's motion, reasoning that, although the grand jury would have benefited from instructions on the ele-

---

[3]The defendant, citing *People* v. *Calbud, Inc.*, 49 N.Y.2d 389 (1980), urges us to follow the law of New York, which, he claims, requires that the grand jury be informed of the elements of the offense. Our review of that case reveals otherwise. The Court of Appeals of New York noted that the law directed the prosecutor to give legal instruction to the grand jury, but only where "necessary or appropriate." *Id.* at 394. The court held that the grand jury "need not be instructed with the same degree of precision that is required when a petit jury is instructed on the law," advising that this requirement is met "by reading to the Grand Jury from the appropriate sections of the Penal Law." *Id.* at 394, 395 & n.1. The prosecutor did so in this case.

ments of murder in the first and second degree, the defendant's due process rights were not violated. We agree.

The Commonwealth is not required to inform a grand jury of the elements of the offense for which it seeks an indictment or of any lesser included offenses. See *Commonwealth* v. *Bousquet,* 407 Mass. 854, 860 (1990) (rejecting contention that prosecutor required to instruct grand jurors on differences between murder in first degree and second degree and manslaughter). See also *United States* v. *Zangger,* 848 F.2d 923, 925 (8th Cir. 1988) (prosecutor under no obligation to give grand jurors legal instructions); *United States* v. *Kenny,* 645 F.2d 1323, 1347 (9th Cir.), cert. denied, 452 U.S. 920 (1981) (holding that United States Constitution imposes no requirement that grand jurors receive legal instructions). The degree of murder is properly determined by the petit jury. G. L. c. 265, § 1. If the grand jurors had asked for instructions, however, the prosecutor should have provided the appropriate information. See *Commonwealth* v. *Kelcourse,* 404 Mass. 466, 468 (1989), quoting *Attorney Gen.* v. *Pelletier,* 240 Mass. 264, 307 (1922) ("A prosecutor may advise a grand jury on the law 'in appropriate instances' "); K.B. Smith, Criminal Practice and Procedure § 786 (2d ed. 1983).

Our rule comports with our practice of subjecting grand jury proceedings to only limited judicial review. As long as the evidence before the grand jury was sufficient to warrant a conclusion of probable cause and the integrity of the proceedings was unimpaired, we do not disturb an indictment. *Commonwealth* v. *Mayfield,* 398 Mass. 615, 619-620 (1986), and cases cited. Any further review of grand jury proceedings would add delay and complexity without serving any significant purpose.

3. *Issue likely to arise at retrial.* One additional issue raised by the defendant is likely to arise at retrial. The defendant argues that he was prejudiced by the judge's incomplete instruction on the absence of a duty to retreat from a person unlawfully in one's dwelling. G. L. c. 278, § 8A.[4] Specifically, the defendant claims that the judge failed to instruct the jury on the

---

[4]General Laws c. 278, § 8A, states in pertinent part: "In the prosecution of a person who is an occupant of a dwelling charged with killing or injuring one who was unlawfully in said dwelling, it shall be a defense that the occupant was in his dwelling at the time of the offense and that he acted in the reasonable belief that the person unlawfully in said dwelling was about to inflict

factors used to determine when a person is unlawfully in a dwelling. Defense counsel properly objected, arguing that the jury could conclude incorrectly that David had a right to be in the defendant's apartment because David owned the house or because he had a business in the basement. In these circumstances, jury confusion on this point was likely. Using the law of trespass as a guide, G. L. c. 266, § 120, the judge should have explained how the jurors were to determine whether David was an intruder in the defendant's apartment.[5] See *Commonwealth* v. *Cyr*, 425 Mass. 89, 98 (1997) (no duty to retreat from trespasser); *State* v. *Fetzik*, 577 A.2d 990, 995 (R.I. 1990) (same).

We affirm the denial of the motion to dismiss the indictment. But because of the error in the self-defense instruction, the judgment is reversed, the verdict set aside, and the case remanded to the Superior Court for a new trial.

*So ordered.*

---

great bodily injury or death upon said occupant or upon another person lawfully in said dwelling, and that said occupant used reasonable means to defend himself or such other person lawfully in said dwelling. There shall be no duty on said occupant to retreat from such person unlawfully in said dwelling."

[5]This does not foreclose other means by which a person may be held to be unlawfully in a dwelling. See, e.g., *Commonwealth* v. *Dunn*, 43 Mass. App. Ct. 58, 64 (1997) (crime of "home invasion," G. L. c. 265, § 18C, removes owner's duty to retreat).