**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROBERT YOUSEFIAN,
*Plaintiff-Appellant*,

v.

CITY OF GLENDALE; MICHAEL
LIZARRAGA; PETROS KMBIKYAN,
*Defendants-Appellees*.

No. 12-57269

D.C. No.
2:11-cv-03579-
DMG-MAN

OPINION

Appeal from the United States District Court
for the Central District of California
Dolly M. Gee, District Judge, Presiding

Argued and Submitted
February 5, 2015—Pasadena California

Filed March 5, 2015

Before: Stephen Reinhardt and Ronald M. Gould, Circuit
Judges, and Robert W. Gettleman, Senior District Judge.[*]

Opinion by Judge Reinhardt

---

[*] The Honorable Robert W. Gettleman, Senior District Judge for the
U.S. District Court for the Northern District of Illinois, sitting by
designation.

## SUMMARY[**]

### Civil Rights

The panel affirmed the district court's summary judgment in an action brought pursuant to 42 U.S.C. § 1983 alleging false arrest and malicious prosecution.

Plaintiff was arrested by City of Glendale police officers for an alleged assault on his father-in-law. After plaintiff's arrest, plaintiff's wife met with one of the police officers and gave him drugs which she purported to have found in plaintiff's car. Soon thereafter, the police officer and plaintiff's wife began a sexual relationship. Plaintiff was charged with assault, elder abuse and two counts of drug possession. The drug charges were eventually dismissed for lack of probable cause, a jury acquitted plaintiff of the assault and elder abuse charges and, after conducting an internal investigation, the City terminated the police officer for conduct inconsistent with the proper administration of the department and unbecoming an officer.

The panel held that notwithstanding plaintiff's self-defense claim, there was indisputably probable cause to arrest and prosecute plaintiff for assault and elder abuse. The panel further determined that because the police officer's romantic relationship with plaintiff's wife began after all of the evidence relating to the altercation had been collected and documented in official reports, the police officer's later misconduct did not undermine the existence of probable

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

cause. The panel also affirmed the summary judgment as to the individual defendants on the malicious prosecution claim arising from the charge of drug possession on the grounds that plaintiff failed to demonstrate a Fourth Amendment seizure. Finally, the panel held that because plaintiff's § 1983 claims against the individual police officers failed, his municipal liability claim also necessarily failed. The panel urged municipalities and other employers of law enforcement officers to ensure that conduct like the police officer's in this case is neither permitted in the course of officers' official duties nor condoned thereafter.

## COUNSEL

Mark J. Geragos (argued), Shelley Kaufman, and Tina Glandian, Geragos & Geragos, Los Angeles, California, for Plaintiff-Appellant.

Ann Marie Maurer (argued), Senior Assistant City Attorney, and Michael J. Garcia, City Attorney, Glendale City Attorney's Office, Glendale, California, for Defendants-Appellees City of Glendale and Petros Kmbikyan.

David D. Lawrence I (argued) and Christina M. Sprenger, Lawrence Beach Allen & Choi, Glendale, California; Daniel S. Cha, Lawrence Beach Allen & Choi, Santa Ana, California, for Defendant-Appellee Michael Lizarraga.

## OPINION

REINHARDT, Circuit Judge:

In this § 1983 false arrest and malicious prosecution case, the district court granted summary judgment to both defendant officers and to the City of Glendale (sued under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). We affirm.[1]

## I.

On August 19, 2007, Robert Yousefian called the police to report that he had been attacked by his father-in-law, Matavos Moradian, in his home. Officer Michael Lizarraga of the Glendale Police Department responded, as did three other officers. They saw Moradian, an elderly man, lying on the floor, bleeding profusely from a wound to his head. Yousefian, by contrast, was not seriously injured and refused any medical care. Everyone agreed that Yousefian struck Moradian in the head with a glass candle-holder. Yousefian claimed he did so to defend himself, after Moradian began to hit him with his cane, while Moradian and his wife told police that no such provocation had occurred. Yousefian told the officers that he had asked his in-laws to come over to discuss the whereabouts of his estranged wife, Nora[2] – Moradian's

---

[1] Because we are reviewing a grant of summary judgment, we construe the record in the light most favorable to the non-moving party, Yousefian. A grant of summary judgment is reviewed *de novo*, and we may affirm on any ground supported by the record. *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001).

[2] Nora is referred to here by her first name because she shares a surname with the plaintiff, her ex-husband.

daughter – and the couple's children. In his statement to the police, Yousefian also accused Nora of various forms of sexual impropriety. Lizarraga placed Yousefian under arrest for assault with a deadly weapon. Yousefian was booked at the police station and, later that evening, released on bond. Lizarraga prepared and filed a report describing the physical evidence at the scene and the statements of Yousefian, Moradian, and Moradian's wife, concluding that he found probable cause to arrest Yousefian on the basis of those facts. The reports filed by the other responding officers corroborated the facts as Lizarraga described them.

In the late afternoon, Lizarraga met Nora (who had not been home at the time of the altercation) at the hospital where Moradian was receiving treatment for his injuries. Nora accused Yousefian of drug possession, and urged Lizarraga to search his car and home. Lizarraga declined, but gave Nora his cell phone number and told her to call him if she found any drugs. Shortly thereafter, Nora called, and told him that she had found drugs in Yousefian's car. When Lizarraga and another officer arrived, she handed them drugs she purported to have found. Lizarraga booked them into evidence but did not re-arrest Yousefian.

Soon thereafter, Lizarraga began to flirt with Nora by text message, and within a couple of weeks, they began a sexual relationship, which lasted about a year. Lizarraga told neither his supervisors nor the prosecutors involved in the case about the affair.

After Yousefian was arrested, the case was turned over to Detective Petros Kmbikyan, whom Deputy District Attorney Singer asked to conduct a follow-up investigation. Lizarraga had no more involvement in the case until after charges were

filed. He did not discuss the case with Singer, and did not sign the criminal complaint. His only further involvement was as described *infra*.

Kmbikyan's investigation, conducted in October 2007, approximately two months after the arrest, included a re-enactment of the assault with Moradian and his wife, but centered mainly on the drugs. Kmbikyan conducted a voluntary interview with Yousefian. Yousefian requested that he be allowed to record the interview, but Kmbikyan assured him it would be taped. Apparently, no recording was made, because of "some sort of malfunction or the volume being turned off." Kmbikyan told Yousefian that his fingerprints had been found on the plastic bags containing the drugs Nora had handed over (this was not true), but Yousefian maintained that she had planted them. Kmbikyan suggested in his report that Yousefian's agitation might be a symptom of narcotic use but failed to document Yousefian's offer to take a polygraph or hair follicle drug test. Additionally, Kmbikyan received a fax from Nora containing the negative results of a series of drug tests Yousefian had taken; she asked him to verify their validity. Kmbikyan did not inform Singer that he had received this probative evidence until after the preliminary hearing.

At the end of October 2007, Yousefian was charged with four felony counts: assault, elder abuse, and two counts of drug possession. At his arraignment, in December of that year, Yousefian was released on his own recognizance; the court required that he stay away from the victims of the assault, and not possess weapons or drugs. At the preliminary hearing, which was held in June and August, 2008, both Lizarraga and Kmbikyan testified (along with Moradian and Nora). Lizarraga's testimony was in all respects consistent

with the documentation in his police report of evidence gathered at the scene. The defense called Kmbikyan, who testified that Yousefian had played for him voicemail messages left by Nora, threatening retribution if Yousefian called the police (as he did after the altercation with Moradian). The magistrate held him to answer on the assault and elder abuse charges, but dismissed the drug possession charges for lack of probable cause, concluding that Nora had fabricated evidence.

In February 2010, in preparation for trial, another prosecutor, Deputy District Attorney Worchell, met consecutively with Lizarraga and Nora, who bumped into each other in the hallway (at this point, they were no longer having an affair). Text message records reveal that after the encounter, Lizarraga told Nora that they should lie in order to conceal their relationship. He also assured her that a minor inconsistency in her parents' stories about the assault was "not . . . too big a deal." When Yousefian's defense counsel obtained these cell phone records, in May of that year, he informed the prosecutor (who informed Kmbikyan) of them. Lizarraga then admitted the affair. Worchell decided to continue with the case, concluding that "[t]here was no need to dismiss any charges here as a result of that relationship. That, I can tell you for certain."

At trial, Lizarraga was questioned about, and acknowledged, his relationship with Nora, which he characterized as "friends with benefits." On July 8, 2010, the jury acquitted Yousefian of the two remaining charges – assault and elder abuse.

The police department conducted an internal affairs investigation of Lizarraga.[3] Initially, it was conducted by Sergeant Glassick, who was apparently a friend and mentor of Lizarraga's. The investigation was completed by another Sergeant, however, after Lizarraga revealed that, some months earlier, he had disclosed his affair to Glassick, who said "he didn't think it was that big a deal and [that Lizarraga] didn't have anything to worry about but [that] as a courtesy to the District Attorney before [he took] the stand for the trial, [he] ha[d] to tell him about it." Lizarraga also told investigators that he had previously given his cell phone number to women he met on duty, and that he had developed relationships with some, but never before with a suspect, witness, or victim. Sergeant Alpuerto, one of Lizarraga's supervisors, stated that he did not believe Lizarraga's actions had violated any policy because the officer "knew of other officers who 'met people on jobs and started relationships or friendships that way' and 'didn't see anyone getting disciplined for that.'" At the conclusion of the investigation, in August 2010, Lizarraga was terminated for conduct inconsistent with the proper administration of the department and unbecoming an officer. The termination letter stated that although the affair

> had no bearing on the grounds for Mr. Yousefian's arrest, it nonetheless clouded the issues at the trial and impacted the prosecution by requiring the Deputy District Attorney to respond to collateral issues on the

---

[3] Some of the records related to this investigation were filed under seal. However, the parties' public briefs quoted from these records without objection; we rely on that now-public material in describing the facts of this case.

eve of trial. . . . You made a series of poor decisions that colored the objectivity of the arrest, the investigation, and the subsequent court proceedings.

## II.

The absence of probable cause is a necessary element of § 1983 false arrest and malicious prosecution claims. *Barry v. Fowler*, 902 F.2d 770, 772–73 (9th Cir. 1990); *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004).

Here, there was indisputably probable cause to arrest and prosecute Yousefian for assault and elder abuse. A police officer who finds an elderly and infirm man bleeding profusely from a head wound admittedly inflicted by a younger man without significant injuries will have probable cause to believe that the latter has committed assault. Further, the victims and his wife both told the officers at the scene that Yousefian had attacked him without provocation. Because Lizarraga's romantic relationship with Nora began after all of the evidence relating to the altercation had been collected and documented in official reports (by Lizarraga and the other responding officers), his later misconduct does nothing to undermine the existence of probable cause.[4]

---

[4] As noted *supra*, Lizarraga's subsequent testimony was limited to recounting what was in his previously filed police reports.

Yousefian's claims regarding Kmbikyan's alleged misconduct relate not to the assault and elder abuse charges, but rather to the failure to disclose to the prosecutor evidence related to the drug charges.

Yousefian argues that a jury could conclude that probable cause was lacking because he himself called the police to the scene and told them that he struck his father-in-law in self-defense. However, probable cause requires only that those "facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person to believe 'that the suspect has committed . . . an offense.'" *Barry*, 902 F.2d at 773 (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). Certainly, an officer may not ignore exculpatory evidence that would "negate a finding of probable cause." *Broam v. Bogan*, 320 F.3d 1023, 1032 (9th Cir. 2003). Lizarraga did not ignore Yousefian's protestations, however; he documented them in his report, but simply believed Moradian and his wife's version of the incident to be more credible. The mere existence of some evidence that could suggest self-defense does not negate probable cause. Yousefian's claim of self-defense apparently created doubt in the minds of the jurors, but probable cause can well exist (and often does) even though ultimately, a jury is not persuaded that there is proof beyond a reasonable doubt. *See Borunda v. Richmond*, 885 F.2d 1384, 1389 (9th Cir. 1988). Here, notwithstanding the self-defense claim, a jury could not reasonably have concluded that the facts known to Lizarraga were insufficient to establish probable cause and thus – contrary to the magistrate's determination – that probable cause was lacking.[5]

---

[5] At oral argument and in the briefs, Yousefian's counsel cited *Hernandez v. City of Napa*, 781 F. Supp. 2d 975 (N.D. Cal. 2011), which found a triable question of fact as to whether there was probable cause to arrest a woman who called the police to her own home during a domestic dispute. However, that case is neither controlling precedent nor persuasive.

Because no reasonable jury could conclude that there was no probable cause for the arrest or for prosecution on the assault and elder abuse charges, we need not decide whether the magistrate's probable cause determination at the preliminary hearing would collaterally estop relitigation of the issue, or whether the prosecutor exercised independent judgment in filing the charges. *See Awabdy*, 368 F.3d at 1067–68. Summary judgment as to the individual defendants on the assault and elder abuse claims is affirmed.

As for the drug charges, no arrest occurred. Yousefian urges only a claim of malicious prosecution. For such a claim to be cognizable under § 1983, in addition to showing that the defendants prosecuted him with malice and without probable cause, a plaintiff must demonstrate a Fourth Amendment seizure (or the violation of another such "explicit textual source of constitutional protection"). *See Albright v. Oliver*, 510 U.S. 266, 271–75 (1994); *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995).

The only seizure Yousefian could arguably have suffered as a result of his prosecution on the simple drug possession charges was being subjected to own-recognizance (OR) release conditions[6] between the time of his arraignment and the time of his preliminary hearing. Those conditions would,

---

[6] According to statute, these release conditions require defendants to appear for all hearings and to request permission before leaving the state. Cal. Penal Code § 1318(a). Our case law does not make clear whether California's OR release conditions, as applied to a defendant facing felony charges, constitute a Fourth Amendment seizure. In *Karam v. City of Burbank*, 352 F.3d 1188, 1193–94 (9th Cir. 2003), we held that the same conditions, as applied to a defendant facing only misdemeanor charges, did not, but left open the question as it applies to a defendant facing felony charges. We need not, and do not, resolve that question here.

however, have applied to him in any event, because during that period, he was subjected to those same conditions in connection with his OR release on the assault and elder abuse charges. In some cases, the inclusion of charges unsupported by probable cause in addition to charges that are supported might result in more restrictive conditions of release or increased bond. Here, however, the same release conditions – the minimum conditions required by statute – were imposed on both sets of charges. Moreover, the same conditions remained in place after the drug charges were dismissed. Even assuming that subjecting Yousefian to the OR release conditions constituted a seizure, he would have been subjected to that seizure regardless of the filing of the drug possession charges. The OR release conditions were properly imposed as a result of the assault and elder abuse charges, and would have restrained Yousefian's liberty (assuming it was restrained) in exactly the same manner and to precisely the same degree, regardless of the filing of the drug possession charges. Thus, the drug prosecution was not the cause of Yousefian's suffering any restraint he would not otherwise have suffered. *See Harper v. City of L.A.*, 533 F.3d 1010, 1026 (9th Cir. 2008). In sum, Yousefian suffered no civil rights injury as a result of the OR release conditions in connection with the drug possession charges, and thus summary judgment as to the individual defendants on the drug possession claim is affirmed.

### III.

As the district court correctly noted, municipalities cannot be held liable when the individual police officer has inflicted no constitutional injury. *See City of L.A. v. Heller*, 475 U.S. 796, 799 (1986) (per curiam); *Jackson v. City of Bremerton*, 268 F.3d 646, 653–54 (9th Cir. 2001). Because Yousefian's

§ 1983 claims against Lizarraga and Kmbikyan fail, his municipal liability claim also necessarily fails.

\* \* \*

The behavior of Officer Lizarraga was certainly reprehensible – as the City of Glendale recognized in firing him. Although it did not do so here, such conduct by police officers puts in jeopardy the integrity of legitimate prosecutions and jeopardizes defendants' right to a fair trial. This is not the first case we have had in recent months in which a police officer in Los Angeles County has engaged in similar conduct with a woman involved in a case which the officer was assigned to investigate. *See Hernandez v. Kennedy*, No. 12-55023, 2014 WL 6956890 (9th Cir. Dec. 10, 2014) (unpublished). Fortunately, because Lizarraga's improper conduct in no way affected the question whether there was probable cause to arrest and prosecute Yousefian for assault and elder abuse, the false arrest and malicious prosecution claims regarding those charges fail. Yousefian's malicious prosecution claim with respect to Kmbikyan's actions with respect to the drug charges also fails, because Yousefian suffered no injury that he would not otherwise have suffered as a result of the filing of these charges, and thus incurred no constitutional injury on account of them. Because no constitutional violation occurred, there can be no *Monell* liability on the part of the City of Glendale. Still, we would urge municipalities and other employers of law enforcement officers to ensure that conduct like Lizarraga's is neither permitted in the course of officers' official duties nor condoned thereafter. In doing so, we intimate no criticism

of the City of Glendale, which took the appropriate action after Lizarraga's conduct came to light.

**AFFIRMED.**