BUDD, J.
**2 *700 Until recently, we provided only limited guidance regarding legal instructions furnished to grand juries. We had held, for example, that "it is the duty of the district attorney in appropriate instances to advise [the grand jury] concerning the law," Attorney Gen. v. Pelletier, 240 Mass. 264, 307, 134 N.E. 407 (1922), and that an appropriate instance for such instructions is when the grand jury request them, Commonwealth v. Noble, 429 Mass. 44, 48, 707 N.E.2d 819 (1999). Then, in Commonwealth v. Walczak, 463 Mass. 808, 979 N.E.2d 732 (2012), we held that where the Commonwealth seeks to indict a juvenile for murder, and substantial evidence of mitigating circumstances or defenses (other than lack of criminal responsibility) is presented to a grand jury, the Commonwealth must instruct the grand jury on the elements of murder and on the legal significance of those mitigating circumstances or defenses. Id. at 810, 979 N.E.2d 732. We are called on in this case to determine whether the Commonwealth's failure to provide instructions to the grand jury regarding the significance of the mitigating evidence it presented requires dismissal of an indictment against an adult for murder in the first degree.
As reflected in this plurality opinion and in the separate opinions that follow, six Justices are of the view that it is generally advisable for prosecutors to instruct grand juries on the elements of lesser offenses and defenses whenever such instructions would help the grand jury to understand the legal significance of mitigating **3 circumstances and defenses.[1] *701 The Justices disagree, however, as to the consequences of failing to provide such instructions. The three Justices who subscribe to this plurality opinion would hold that the integrity of a grand jury is impaired, and the dismissal of an indictment due to the lack of instructions is therefore appropriate, only when the instructions likely would have given effect to a complete defense -- in other words, only where the exculpatory evidence[2] presented to the grand jury was so compelling that giving instructions on that evidence probably would have resulted in the grand jury returning a no bill. Two Justices -- Chief Justice Gants and Justice Lenk -- would hold that a prosecutor's failure to give a grand jury appropriate instructions on mitigating circumstances and defenses ought to result in the dismissal of an indictment if the absence of instructions probably influenced the grand jury's decision to return an indictment for murder as opposed to manslaughter **4 or a no bill. Two other Justices -- Justice Cypher and Justice Lowy -- would hold that the integrity of a grand jury is impaired by a prosecutor's failure to give instructions only in cases where there has been affirmative prosecutorial misconduct, i.e., only if and when the facts known to the prosecutor clearly establish that the instruction would result in a complete exoneration, yet the prosecutor withholds appropriate instructions.
Because this case fails to satisfy the standards for dismissal set forth in this plurality opinion and in Justice Cypher's concurring opinion, five Justices (those who subscribe to this opinion and Justice Cypher's opinion) agree that, here, the indictment should not have been dismissed.
Background. The evidence presented to the grand jury was as follows. On the evening of May 7, 2014, the defendant banged on her neighbors' door and asked for help. The neighbors followed the defendant to her home and discovered the victim (the defendant's fiancé) on the floor in the kitchen covered in blood. His carotid artery had been cut; efforts to resuscitate him failed. When asked what had happened, the defendant responded, "[H]e hit me, so I hit him."
Later that night, the defendant gave a recorded interview to police in which she stated that, on the night of the killing, both she and the victim had been drinking when he became "physical." The victim began choking and beating the defendant; he then pulled out "knives and guns." At one point it appears that both had knives, and that the victim was choking the defendant. When the defendant tried to protect herself, the victim told her that he had been stabbed and that he felt dizzy. The defendant observed the stab wound to the victim's neck. After being unable to find her cellular telephone (cell phone), she went to the neighbors' house for help. The detective who interviewed the defendant stated that he could "see the bruises" on her.
Witnesses testified to seeing bruises on the defendant at various times during the *702 relationship. The defendant told one witness that the victim had put a gun to the defendant's mouth on multiple occasions, and she told police that the victim had been abusive toward her.[3] The police seized the defendant's cell phone and recovered a text message from the victim in which he threatened to kill the defendant's former boyfriend; that message was accompanied by a photograph of the victim holding a gun. **5 There also was evidence of the defendant's history of violence, including against the victim. A neighbor had heard the defendant yelling at the victim two or three times per week. Another witness observed the defendant berating the victim and "throwing closed fist punches" at him. The defendant's former boyfriend testified that the defendant told him that she had anger issues and that when she gets upset she could "actually murder somebody." The defendant admitted to him that she had stabbed the victim on a previous occasion.[4] Moreover, during an argument with the former boyfriend, the defendant pulled a knife out, but he was able to knock it out of her hand.
Prior proceedings. The defendant initially was arraigned in the District Court on a charge of manslaughter. Over the course of a year, four different grand juries heard evidence pertaining to the homicide, the last of which issued indictments against the defendant charging her with murder and assault and battery with a dangerous weapon.[5] The defendant moved to dismiss the murder charge, arguing among other things that the Commonwealth had failed to provide the grand jury with instructions regarding the mitigating circumstances that it presented. A judge in the Superior Court allowed the motion, concluding that although there was probable cause to return an indictment for murder, the Commonwealth's failure to provide instructions on the mitigating factors impaired the integrity of the grand jury proceedings. After a motion for reconsideration was denied, the Commonwealth appealed. We granted the defendant's application for direct appellate review.
Discussion. 1. Standard. The grand jury are an investigatory body with a dual function: "determining whether there is probable cause to believe that a crime has been committed and ... protecting citizens against unfounded criminal prosecutions." Lataille v. District Court of E. Hampden, 366 Mass. 525, 532, 320 N.E.2d 877 (1974). See Jones v. Robbins, 8 Gray 329, 342, 350 (1857) (under art. 12 of Massachusetts Declaration of Rights, grand jury indictment is required for crimes punishable by term in State prison).
The role of a grand jury is vastly different from that of the petit jury. "[A] grand jury indictment depends only on the existence of **6 evidence sufficient to warrant a finding of probable cause to arrest [the defendant]" (quotations omitted), Commonwealth v. Maggio, 414 Mass. 193, 198, 605 N.E.2d 1247 (1993), quoting Commonwealth v. O'Dell, 392 Mass. 445, 451, 466 N.E.2d 828 (1984). "As the standard is most often formulated, probable cause exists where, at the moment of arrest, the facts and circumstances within the knowledge *703 of the police are enough to warrant a prudent person in believing that the individual arrested has committed or was committing an offense." Commonwealth v. Storey, 378 Mass. 312, 321, 391 N.E.2d 898 (1979), cert. denied, 446 U.S. 955, 100 S.Ct. 2924, 64 L.Ed.2d 813 (1980), and cases cited. See Commonwealth v. Santaliz, 413 Mass. 238, 241, 596 N.E.2d 337 (1992), quoting Commonwealth v. Rivera, 27 Mass. App. Ct. 41, 45, 534 N.E.2d 24 (1989) ("The officers must have entertained rationally 'more than a suspicion of criminal involvement, something definite and substantial, but not a prima facie case of the commission of a crime, let alone a case beyond a reasonable doubt' "). Grand jury proceedings are secret and nonadversary in nature, and thus the person under investigation is not entitled to be represented by counsel, "to present witnesses, to cross-examine adverse witnesses, or even to be present." Commonwealth v. Gibson, 368 Mass. 518, 525 n.2, 333 N.E.2d 400 (1975), S.C., 377 Mass. 539, 387 N.E.2d 123 (1979) and 424 Mass. 242, 675 N.E.2d 776, cert. denied, 521 U.S. 1123, 117 S.Ct. 2518, 138 L.Ed.2d 1020 (1997), citing United States v. Calandra, 414 U.S. 338, 343-346, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974).
"Because of ... the availability of an unprejudiced petit jury at trial, the safeguards deemed necessary to protect an accused before a petit jury are not implicated to the same degree in grand jury proceedings." Commonwealth v. McLeod, 394 Mass. 727, 733, 477 N.E.2d 972 (1985). See Commonwealth v. Geagan, 339 Mass. 487, 499, 159 N.E.2d 870, cert. denied, 361 U.S. 895, 80 S.Ct. 200, 4 L.Ed.2d 152 (1959). That is, the dismissal of an indictment is not required "[a]s long as the evidence before the grand jury was sufficient to warrant a conclusion of probable cause and the integrity of the proceedings was unimpaired."[6] Noble, 429 Mass. at 48, 707 N.E.2d 819, citing Commonwealth v. Mayfield, 398 Mass. 615, 619-620, 500 N.E.2d 774 (1986). See Commonwealth v. McGahee, 393 Mass. 743, 746-747, 473 N.E.2d 1077 (1985). See also **7 Commonwealth v. O'Dell, 392 Mass. 445, 451, 466 N.E.2d 828 (1984) (standard for evidence in grand jury proceedings is "considerably less exacting than a requirement of sufficient evidence to warrant a guilty finding").
In considering the claim that the Commonwealth's failure to provide the grand jury with instructions on the legal significance of the mitigating evidence prevented that body from properly evaluating the evidence, the starting point is the general principle that "[t]he extent of the [prosecutor]'s obligation to instruct the [g]rand [j]ury ... must be defined with reference to the role of that body," Walczak, 463 Mass. at 824, 979 N.E.2d 732 (Lenk, J., concurring), quoting People v. Valles, 62 N.Y.2d 36, 38, 476 N.Y.S.2d 50, 464 N.E.2d 418 (1984) ; that is, "to protect the innocent, and bring to trial those who may be guilty," State v. Hogan, 336 N.J. Super. 319, 341, 764 A.2d 1012 (2001). See Lataille, 366 Mass. at 532, 320 N.E.2d 877. As noted supra, the evidence required to indict is significantly less than that which is required to warrant a finding of guilt beyond a reasonable doubt. Commonwealth v. Moran, 453 Mass. 880, 883, 906 N.E.2d 343 (2009). Because the Commonwealth's *704 burden of proof for indictment is relatively low, see Lataille, supra, "the defendant bears a heavy burden to show impairment of the grand jury proceeding," see Commonwealth v. LaVelle, 414 Mass. 146, 150, 605 N.E.2d 852 (1993), citing Commonwealth v. Shea, 401 Mass. 731, 734, 519 N.E.2d 1283 (1988).
The treatment of exculpatory evidence withheld from the grand jury is particularly instructive in determining whether a prosecutor has an obligation to instruct the body on certain possible defenses. See Hogan, 336 N.J. Super. at 341, 764 A.2d 1012 ("a prosecutor's obligation to instruct the grand jury on possible defenses is a corollary to his [or her] responsibility to present exculpatory evidence"). "Prosecutors are not required in every instance to reveal all exculpatory evidence to a grand jury." McGahee, 393 Mass. at 746, 473 N.E.2d 1077, citing O'Dell, 392 Mass. at 447, 466 N.E.2d 828. Rather, the integrity of the grand jury proceedings has been impaired and dismissal is warranted where the omitted exculpatory evidence "would likely have affected the grand jury's decision to indict." Commonwealth v. Clemmey, 447 Mass. 121, 130, 849 N.E.2d 844 (2006). See Commonwealth v. Connor, 392 Mass. 838, 854, 467 N.E.2d 1340 (1984) ("If the grand jury were not made aware of circumstances which undermine the credibility of evidence that is likely to have affected their decision to indict, then the appropriate remedy may be dismissal of the indictment"). See also O'Dell, supra at 447, 466 N.E.2d 828 ("the withholding of a portion of the defendant's statement distorted the portion that was repeated to the grand jury in a way that so **8 seriously tainted the presentation to that body that the indictment should not have been allowed to stand"). Similarly, the presentation of false or misleading evidence only requires the dismissal of an indictment where the evidence was presented with the knowledge that it was false, with the express purpose of obtaining an indictment, and "probably influenced the grand jury's determination to hand up an indictment." Mayfield, 398 Mass. at 621, 500 N.E.2d 774.
It stands to reason, then, that the same is true for instructions regarding exculpatory evidence; that is, the integrity of the grand jury proceedings would be impaired by the lack of instructions only where providing them "would likely have affected the grand jury's decision to indict." Clemmey, 447 Mass. at 130, 849 N.E.2d 844. The defendant must establish that such instructions likely would have given effect to a complete defense, resulting in a no bill. See Hogan, 336 N.J. Super. at 341-342, 764 A.2d 1012 (adopting rule that prosecutors are required to instruct on possible defenses only where, if believed, defense would result in finding of no criminal liability). See also Bank of Nova Scotia v. United States, 487 U.S. 250, 256, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988), quoting United States v. Mechanik, 475 U.S. 66, 78, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986) ("dismissal of [an] indictment is appropriate only 'if it is established that the [omission] substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such [omission]").
Any showing by the defendant that a grand jury might have determined that a lesser charge was more appropriate would not by itself render the entire prosecution unwarranted, nor does it negate probable cause for the offense as charged, see Moran, 453 Mass. at 883-884, 906 N.E.2d 343. Thus, this is not a basis for holding that the integrity of a grand jury proceeding was impaired.
*705 This is so for two interrelated reasons. First, as discussed supra, the role of the grand jury is limited. They are no more than an investigatory and accusatory body. See Lataille, 366 Mass. at 532, 320 N.E.2d 877. Unlike the petit jury, who are tasked with determining whether a defendant is guilty beyond a reasonable doubt of the crime charged or of a lesser offense, the grand jury "cannot and do[ ] not determine guilt." Commonwealth v. Wilcox, 437 Mass. 33, 39, 767 N.E.2d 1061 (2002), quoting Brunson v. Commonwealth, 369 Mass. 106, 120, 337 N.E.2d 895 (1975). See Commonwealth v. Colon-Cruz, 408 Mass. 533, 549, 562 N.E.2d 797 (1990) ("The grand jury ... is not the appropriate forum for determining guilt or innocence"). Instead, the grand jury need only "hear sufficient evidence to establish the identity of the **9 accused ... and probable cause to arrest him" in order to indict (citations omitted). Commonwealth v. McCarthy, 385 Mass. 160, 163, 430 N.E.2d 1195 (1982).
Second, as a general rule, "[t]he Commonwealth is not required to present evidence of so-called defenses or otherwise disprove such matters before the grand jury." Commonwealth v. Silva, 455 Mass. 503, 511, 918 N.E.2d 65 (2009). Nor is a prosecutor required to instruct the grand jury on the elements of any lesser included offenses. Noble, 429 Mass. at 48, 707 N.E.2d 819. Indeed, prosecutors are permitted to use the same indictment for charging the various degrees of homicide. See Commonwealth v. DePace, 442 Mass. 739, 743, 816 N.E.2d 1215 (2004), cert. denied, 544 U.S. 980, 125 S.Ct. 1842, 161 L.Ed.2d 735 (2005) (statutory form of indictment alleging murder is sufficient to charge murder under any theory and in any degree, as well as manslaughter). Indeed, the degree of murder is properly determined by the petit jury, not the grand jury. Noble, supra at 48, 707 N.E.2d 819. McLeod, 394 Mass. at 733, 477 N.E.2d 972, quoting Brunson, 369 Mass. at 120, 337 N.E.2d 895 ; G. L. c. 265, § 1 ("The degree of murder shall be found by the [petit] jury"). As the defendant is neither entitled to have the grand jury instructed on the differences between the degrees of homicide, nor to have the lowest possible homicide charge returned, it follows that the defendant is not entitled to have the grand jury instructed on the significance of mitigating evidence presented that might cause the body to find probable cause for manslaughter rather than murder.
The dissent and Justice Cypher's concurrence represent very different views of the function of the grand jury and what it means for that function to be impaired. Those views -- which occupy different ends of the spectrum of possible resolutions to this issue -- are unnecessarily extreme in comparison to the more moderate, and more appropriate, approach laid out supra.
In his dissent, Chief Justice Gants contends that the "relevant inquiry is ... whether the grand jury's decision to return an indictment for murder, rather than manslaughter, was 'probably influenced' by the absence of legal guidance." Post at ----, 130 N.E.3d 696. Thus, in the dissent's view, the integrity of the process was impaired here because the omitted instructions on the excessive use of force in self-defense probably would have led to a charge of manslaughter. See post at ----, 130 N.E.3d 696. This view is flawed for a number of reasons.
First, and foremost, it does not comport with our case law. As explained supra, the conclusion that the grand jury process is impaired only if the omitted legal instructions likely would have **10 resulted in a no bill is based on prior holdings of this court pertaining to withheld exculpatory evidence. And these prior decisions have held *706 that the failure to present exculpatory evidence impairs the integrity of the process only where the omitted information "would likely have affected the grand jury's decision to indict," Clemmey, 447 Mass. at 130, 849 N.E.2d 844, not, as the dissent contends, if the omitted evidence might have caused the grand jury to indict for a lesser offense. See Mayfield, 398 Mass. at 621, 500 N.E.2d 774 (presentation of false or misleading evidence only impairs integrity of grand jury process if, among other things, it "probably influenced the grand jury's determination to hand up an indictment").[7]
Citing to dicta in the concurring opinions in Walczak, the dissent reasons that "[b]ecause mitigating evidence tends to cast doubt on the Commonwealth's proof regarding an essential element of a crime for which the Commonwealth seeks an indictment, it is exculpatory as to that crime." Post at ----, 130 N.E.3d 696, citing Walczak at 822-823, 979 N.E.2d 732 (Lenk, J., concurring); id. at 839, 467 N.E.2d 1340 (Gants, J., concurring). Granted, there are important consequences to the degree of the charge, but the court heretofore has held that the question for the purposes of the impairment analysis is whether withheld evidence "would likely have affected the grand jury's decision to indict," not whether they would have preferred to indict for a lesser version of the offense. Post at ----, 130 N.E.3d 696. See Clemmey, 447 Mass. at 130, 849 N.E.2d 844. See also Noble, 429 Mass. at 48, 707 N.E.2d 819. The dissent's reasoning is also directly contradicted by the practice in this Commonwealth of using the statutory form murder indictment to charge both degrees of murder (unless otherwise specified) and also manslaughter as a lesser included offense, see DePace, 442 Mass. at 743, 816 N.E.2d 1215, and then leaving to the petit jury questions of the actual degree of culpability, whether it be murder in the first or second degree, manslaughter, or not guilty. Noble, 429 Mass. at 48, 707 N.E.2d 819.
Moreover, the dissent relies on Walczak as support for its **11 position that mitigating evidence should receive the same treatment as exculpatory evidence when determining impairment, post at ----, 130 N.E.3d 696, but this reliance is misplaced. The majority in Walczak, 463 Mass. at 809-810, 979 N.E.2d 732, held that this was true with respect to juvenile defendants, but did not hold it to be so for adult defendants. Only then Justice Gants and the two Justices who joined him in his concurrence would have applied this proposition to adult defendants. Id. at 841, 979 N.E.2d 732 (Gants, J., concurring). Justice Lenk's concurring opinion in that case, which was necessary to arrive at the holding of the majority, was firmly grounded in the unique consequences for juveniles facing indictments for murder rather than manslaughter; she did not subscribe to the view of Justice Gants in that case, that mitigating and exculpatory evidence should receive the same treatment in all cases.[8] See ibr.US_Case_Law.Schema.Case_Body:v1">id. at 822-823, 979 N.E.2d 732 *707 (Lenk, J., concurring). It is therefore incorrect to claim that the holding in Walczak supports the proposition that grand jury proceedings for adult defendants are impaired where the omitted instructions relate to evidence that is merely mitigating and not wholly exculpatory.[9]
In addition, the dissent's view conflates the roles of the grand jury and the petit jury. The duty of the grand jury is to determine whether there is probable cause to believe the crime alleged in the indictment has been committed.[10] See McCarthy, 385 Mass. at 163, 430 N.E.2d 1195. The petit jury, by contrast, uniquely are responsible for making the determination whether the defendant is guilty of the crime charged in the indictment, of a lesser included offense, or **12 not at all. See Noble, 429 Mass. at 48, 707 N.E.2d 819 ; Colon-Cruz, 408 Mass. at 549, 562 N.E.2d 797. Given this division of responsibility, the fact that a possible outcome of the grand jury process is that a defendant might be indicted for murder, only to be convicted of a lesser offense (e.g., manslaughter) at trial, does not call the integrity of that process into question.
Further, although the dissent purports to limit its rule to requiring instructions on mitigating evidence in murder cases, see post at ----, ----, 130 N.E.3d 696, where the failure to provide instructions might result in an indictment for murder rather than manslaughter, see post at ----, 130 N.E.3d 696, there exists no principled reason for such a restriction. Taken to its logical conclusion, the dissent's rule would appear also to require prosecutors to provide grand juries instructions for all lesser included offenses in all criminal cases to avoid impairing the integrity of the grand jury process. See Noble, 429 Mass. at 48, 707 N.E.2d 819 (excessive judicial regulation of grand jury "would add delay and complexity without serving any significant purpose").
The dissent agrees, as does Justice Lowy in his concurrence, that, as a matter of best practices, instructions on both defenses and mitigating circumstances should be provided to grand juries, including instructions that might possibly affect the decision whether to indict for manslaughter as opposed to murder. See note 1, supra. However, the operative question on a motion to dismiss an indictment is whether the integrity of the grand jury proceedings has been impaired, not whether a prosecutor has conformed to the best practices, and the question whether the proceedings have been impaired is determined only by asking whether, had there been appropriate instructions, the grand jury would have returned no indictment at all. See, e.g., Mayfield, 398 Mass. at 621-622, 500 N.E.2d 774 (presentation of false *708 or misleading evidence, even if intentional, by itself does not require dismissal; defendant also must show that presentation of such evidence probably influenced decision to indict). See also Clemmey, 447 Mass. at 130, 849 N.E.2d 844 ; McGahee, 393 Mass. at 746-747, 473 N.E.2d 1077 (same).
At the other end of the spectrum from the dissent, the concurrence by Justice Cypher suggests that the integrity of the grand jury process should be considered impaired only where the prosecutor intentionally withholds instructions and providing them probably would result in a complete exoneration. Post at ----, 130 N.E.3d 696. This position, like that of the dissent, is not supported by our case law.
It is true that the intent of the prosecutor presenting the case to the grand jury is an important factor in determining whether **13 dismissal of an indictment is required in circumstances like this. In reviewing grand jury proceedings where false information was provided, or exculpatory evidence was withheld, we have required a showing that the conduct of the prosecutor was intentional and done for the purpose of obtaining an indictment. See Clemmey, 447 Mass. at 130, 849 N.E.2d 844, and cases cited; Mayfield, 398 Mass. at 621, 500 N.E.2d 774, and cases cited. In other words, the court must consider whether the prosecutor had actual possession or knowledge of the evidence, see Wilcox, 437 Mass. at 37, 767 N.E.2d 1061, and, if so, whether the prosecutor withheld the evidence for valid reasons unrelated to the indictment. See LaVelle, 414 Mass. at 150, 605 N.E.2d 852 (1993) (disclosure would have revealed identity of police informant).
However, reviewing grand jury proceedings where instructions on the law have been withheld does not lend itself to an inquiry regarding intentionality. For example, in Walczak, 463 Mass. at 808, 979 N.E.2d 732, although we held that a prosecutor is obligated to provide instructions on the significance of any substantial mitigating evidence presented to the grand jury when seeking to indict a juvenile for murder, we did not require consideration whether the prosecutor committed misconduct in withholding such instructions. Instructions on the law, unlike exculpatory evidence, are always available to the prosecution, so there is no question to be raised regarding the prosecutor's knowledge and intent. See Commonwealth v. Kelcourse, 404 Mass. 466, 468-469, 535 N.E.2d 1272 (1989). See also Commonwealth v. Reddington, 395 Mass. 315, 319-320, 480 N.E.2d 6 (1985) (defendant failed to establish that law enforcement knew or should have known that evidence was false or inaccurate). Moreover, prosecutors should be prepared to furnish instructions if the grand jury request them. See Noble, 429 Mass. at 48, 707 N.E.2d 819.
Therefore, the relevant question is not whether the prosecution intentionally withheld the instructions, but instead whether the failure to give such instructions, regardless of intent, results in an indictment where otherwise the grand jury would have returned a no bill. It is the result of the omission of the instructions, not the motive behind it, that determines whether the process has been impaired to the point that a dismissal is necessary.
This approach does not, as Justice Cypher contends, "establish another mechanism to dismiss an indictment." Post at ----, 130 N.E.3d 696. Instead, it does no more (or less) here than to undergird the court's duty to review grand jury proceedings where there is a claim that the integrity of the proceedings has been impaired, Mayfield, 398 Mass. at 619-620, 500 N.E.2d 774, and determine, consonant with the court's case **14 law, what constitutes an impairment requiring dismissal. Nor does *709 this approach represent a "fundamental and significant change to grand jury practice in the Commonwealth." Post at ----, 130 N.E.3d 696. To the contrary, it likely would change very little. The only cases affected by this approach will be those in which the exculpatory evidence is compelling enough that the absence of instructions on a complete defense probably would make a difference in the grand jury's decision to hand up an indictment; and as to those, one trusts that an indictment would not be sought -- at least it should not be sought -- in the first place.[11] Limiting judicial intervention to those indictments that enable "needless or unfounded" prosecutions is consonant with the role of the grand jury. Walczak, 463 Mass. at 849, 979 N.E.2d 732 (Spina, J., concurring in part and dissenting in part). See Lataille, 366 Mass. at 532, 320 N.E.2d 877. See also Hogan, 336 N.J. Super. at 341-342, 764 A.2d 1012.
2. Application. In this case, the Commonwealth presented sufficient evidence to the grand jury for them to find probable cause to believe that the defendant committed murder.[12] See McCarthy, 385 Mass. at 160, 163, 430 N.E.2d 1195. That evidence included the fact that the victim was found with a fatal stab wound to the neck, that the defendant and the victim were fighting just prior to the stabbing, and that they were the only adults in the house at the time of the stabbing. The Commonwealth also presented substantial evidence that could have been seen as exculpatory, comprising testimony from witnesses who observed bruises on the defendant, **15 including on the night of the killing; statements from the defendant regarding the victim's abusive behavior toward her during their relationship; and the defendant's statement that she acted in self-defense.
When coupled with instructions from the judge at trial, the evidence presented may result in a petit jury finding the defendant guilty only of voluntary manslaughter (or not guilty of any offense).[13] See *710 McLeod, 394 Mass. at 733, 477 N.E.2d 972 (availability of unprejudiced petit jury at trial obviates need for in-depth appellate scrutiny of all aspects of grand jury process). See also Geagan, 339 Mass. at 499, 159 N.E.2d 870 (inadmissible evidence before grand jury can be remedied at petit jury stage). However, in order for the defendant to prevail on a claim that the integrity of the grand jury proceedings was impaired here, she must demonstrate that, had the Commonwealth provided instructions on the legal significance of the exculpatory evidence presented, it would have resulted in a "complete exoneration" by the issuance of a no bill. See Clemmey, 447 Mass. at 130, 849 N.E.2d 844. See also Hogan, 336 N.J. Super. at 342, 764 A.2d 1012.
The requisite showing is particularly difficult to make here for at least two reasons. First, the exculpatory evidence was weakened substantially by the contrasting evidence of the defendant's violent temper and controlling behavior toward -- and physical abuse of -- the victim, including a prior occasion in which the defendant stabbed the victim.[14] Second, a grand jury are required to find only that the evidence was sufficient "to establish the identity of the accused and probable cause to arrest [her]." See O'Dell, 392 Mass. at 451, 466 N.E.2d 828. "The mere existence of some evidence that could suggest self-defense does not negate probable cause ... probable cause can well exist (and often does) even though ultimately, a jury is not persuaded that there is proof beyond a reasonable doubt." Yousefian v. Glendale, 779 F.3d 1010, 1014 (9th Cir.), cert. denied, --- U.S. ----, 136 S. Ct. 135, 193 L.Ed.2d 41 (2015). See Morris v. Lexington, 748 F.3d 1316, 1325 (11th Cir. 2014) (evidence of **16 self-defense does not negate probable cause to arrest for assault).
Contrary to the dissent's assertion, this approach does not necessarily ask prosecutors to "distinguish between evidence of lawful self-defense and evidence of excessive use of force in self-defense," post at ----, 130 N.E.3d 696. Prosecutors would be well advised to err on the side of presenting exculpatory and mitigating evidence, as well as instructions that give legal meaning to that evidence.[15] See note 1, supra. This is all the more so because, as the dissent notes, evidence showing lawful self-defense overlaps with that showing excessive force. But an indictment should not be disturbed on the basis that, had the grand jury received instructions on the different types of homicide, they would have indicted the defendant for some lesser crime.
Given that the purpose of the grand jury is to determine probable cause and not *711 guilt, the process here appears to have worked as designed. That is, the grand jury determined that there was sufficient evidence to establish probable cause to believe that the defendant committed the crime alleged in the indictment: murder. At trial, a petit jury will weigh the mitigating and exculpatory evidence, along with all the other evidence, to determine whether the defendant is guilty beyond a reasonable doubt of murder or voluntary manslaughter, or not guilty of any offense. See Colon-Cruz, 408 Mass. at 549, 562 N.E.2d 797.
Conclusion. Because the integrity of the grand jury process was not impaired, the order dismissing the indictment against the defendant must be vacated and the case remanded to the Superior Court for further proceedings consistent with this opinion.
So ordered.

In Commonwealth v. Grassie, 476 Mass. 202, 219, 65 N.E.3d 1199 (2017), the court announced that it would convene a special committee to review "current practices employed by the various district attorneys and the Attorney General before considering an extension of the rule adopted in [Walczak, 463 Mass. 808, 979 N.E.2d 732,] to similar types of grand jury proceedings involving adults." The committee, which consisted of judges (both sitting and retired), prosecutors, defense lawyers, and a law school professor, submitted a report to the court. See Supreme Judicial Court Committee on Grand Jury Proceedings: Final Report to the Justices, at 37 (June 2018). The report summarized interviews with representatives from the Commonwealth's prosecutors' offices regarding grand jury practices, and proposed six "best practices" for prosecutors making grand jury presentments. Id. at 11-14, 32-36.
The committee found that practices varied among districts. Some interviewees reported that the assistant district attorneys in their offices instruct grand juries on affirmative defenses or mitigating circumstances only where required to do so under our case law; others go beyond the requirements we have established. Id. at 34.
One of the best practices that the committee proposed, no. 5(B), is to "consider instructing the grand jury [where the defendant is not a juvenile] on the elements of lesser offenses and/or defenses, where such instructions would be in the interest of justice or would assist the grand jurors to understand the legal significance of mitigating circumstances and defenses." Id. at 13. Although we decline to hold that the integrity of grand jury proceedings are impaired whenever substantial exculpatory evidence is unaccompanied by instructions, we strongly encourage district attorneys making grand jury presentments to adopt this and the other best practices outlined in the report.

The words "mitigating" and "exculpatory" appear throughout this opinion to distinguish between evidence that would reduce the gravity of an offense (mitigating evidence) and that which would exonerate a defendant altogether (exculpatory evidence).

The grand jury were presented with evidence that the police found two firearms in the residence.

On the victim's cellular telephone (cell phone), police discovered a photograph of the victim's arm with a stab wound.

The fourth grand jury received the evidence presented to the prior grand juries in the form of exhibits, including transcripts of the prior proceedings. After being presented with some additional evidence, the fourth grand jury voted to indict the defendant.

Even where the integrity of the proceedings are determined to have been impaired, indictments are usually dismissed without prejudice unless the Commonwealth has engaged in willful misconduct. See Commonwealth v. O'Dell, 392 Mass. 445, 447, 466 N.E.2d 828 (1984). See also Commonwealth v. Manning, 373 Mass. 438, 439, 367 N.E.2d 635 (1977) (dismissal of indictment with prejudice is appropriate remedy where Federal officers and prosecutor willfully interfered with defendant's right to counsel).

In his dissent, Chief Justice Gants quotes the phrase "probably influenced" from Mayfield, 398 Mass. at 621, 500 N.E.2d 774, multiple times to make his point that the failure to explain the legal relevance of the mitigating evidence presented to the grand jury led to an impairment of the proceedings. See post at ----, ----, ----, ----, ----, 130 N.E.3d 696. This use of the language is problematic, given the context in which the phrase is used in Mayfield. According to Mayfield, 398 Mass. at 621, 500 N.E.2d 774, the relevant inquiry is "whether, if a grand jury had been told the true facts, it probably would not have indicted the defendant" (emphasis added), not whether it would have indicted the defendant for a lesser offense.

Justice Lenk reasoned that because an indictment for murder has added significance for juveniles who would lose the protections attendant with proceeding in the Juvenile Court, juvenile defendants facing potential murder charges are entitled to extra safeguards at the grand jury stage. Commonwealth v. Walczak, 463 Mass. 808, 824, 832-833, 979 N.E.2d 732 (2012) (Lenk, J., concurring). Id. at 823, 979 N.E.2d 732 (Lenk, J., concurring) (juveniles are "a class of defendants long given special consideration").

In his dissent, Chief Justice Gants cites to his own concurrence in Walczak as support for the proposition that mitigating and exculpatory evidence should receive the same treatment. See post at ----, 130 N.E.3d 696. However, as stated, the majority of the court in Walczak did not accept that proposition with respect to adult defendants; there was simply no majority consensus on that point, one way or the other, in that case. See Walczak, 463 Mass. at 809-810, 979 N.E.2d 732. Therefore, the proposition asserted in Walczak cannot be treated as if it were supported by binding precedent.

Although the grand jury could return an indictment on a lesser (or greater) offense, see Vasquez v. Hillery, 474 U.S. 254, 263, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986), it is nevertheless the Commonwealth that controls the charges presented to the grand jury.

Justice Lowy's concurring opinion misses the mark for essentially the same reasons. Moreover, his prediction that this approach will prove unwieldy and unworkable is unwarranted. Just as prosecutors are able to meet the various obligations that are currently imposed on them by cases such as O'Dell, Mayfield, Clemmey, and Walczak, prosecutors who present evidence before grand juries will be able to meet the fundamental and fairly straightforward obligations that this approach would require of them, namely, to discern where substantial exculpatory evidence they have presented gives rise to a defense that could reasonably result in a no bill, and to instruct the grand juries accordingly.

Murder is the unlawful killing of a human being with malice aforethought. See Commonwealth v. Kane, 388 Mass. 128, 133, 445 N.E.2d 598 (1983), citing Commonwealth v. Webster, 5 Cush. 295, 303, 59 Mass. 295 (1850). To prove malice, the Commonwealth need not prove that the defendant intended to kill the victim; it also may prove malice by showing that the defendant intended to cause grievous bodily harm or that, in circumstances known to the defendant, the defendant intended an act creating a plain and strong likelihood that death would follow. See Commonwealth v. Azar, 435 Mass. 675, 682, 760 N.E.2d 1224 (2002) ; S.C., 444 Mass. 72, 825 N.E.2d 999 (2005). Admittedly, not each of these prongs of malice is compatible with each of the three theories of murder in the first degree.

The defendant's assertion that she acted in self-defense does not necessarily absolve her from culpability. Although the use of self-defense negates the element of malice, see Connolly v. Commonwealth, 377 Mass. 527, 529, 387 N.E.2d 519 (1979), only the proper use of self-defense exonerates a defendant from all criminal liability. Commonwealth v. Carlino, 429 Mass. 692, 694, 710 N.E.2d 967 (1999), S.C., 449 Mass. 71, 865 N.E.2d 767 (2007). Excessive force in self-defense, on the other hand, constitutes manslaughter. Id.

In fact, the other indictment issued by this same grand jury was for the previous instance of the defendant's assault and battery of the victim with a knife.

There is no merit to the dissent's concern that the rule announced today will likely have the unintended consequence of discouraging prosecutors from providing instructions because they will know there will rarely be consequences for failing to do so. Post at ----, 130 N.E.3d 696. First, the duty of the prosecution is "not that it shall win a case, but [instead, to see] that justice shall be done." Commonwealth v. Keo, 467 Mass. 25, 35, 3 N.E.3d 55 (2014), quoting Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). The Commonwealth's prosecutors can be trusted to operate in this spirit and to provide instructions in all appropriate instances. Further, as noted supra, prosecutors are required to provide instructions when so requested by the grand jury. See Commonwealth v. Noble, 429 Mass. 44, 48, 707 N.E.2d 819 (1999). Finally, to help ensure that grand juries are instructed appropriately, Superior Court judges are strongly encouraged to inform grand jurors at the outset of their service that they may request instructions on the elements of crimes alleged in the indictments presented to them, as well as instructions on lesser included offenses.